Michael E. Farnell, OSB #922996
E-Mail:  mfarnell@pfglaw.com
PARSONS FARNELL & GREIN, LLP
1030 SW Morrison Street
Portland, OR  97205
Telephone:  (503) 222-1812
Facsimile:  (503) 274-7979

Michael H. Ginsberg (*pro hac vice*)
Paul J. Jalsevac (*pro hac vice*)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219-2514
Telephone:  (412) 391-3939
Facsimile:  (412) 394-7959

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | | |
|---|---|---|
| AMERICAN MEDICAL RESPONSE NORTHWEST, INC., AMERICAN MEDICAL RESPONSE, INC., | : : : : | **Case No. 09-cv-01196-JO** |
| Plaintiffs, | : : | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO** |
| v. | : : | **NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT** |
| ACE AMERICAN INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | : : : : : | |
| Defendants. | : | |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    FACTUAL BACKGROUND ............................................................................ 2

III.   ARGUMENT ..................................................................................................... 4

    A.    Issues Of Fact On The Subjective Intent Of AMR And AMR Northwest
        Preclude Summary Judgment ..................................................................... 5

        1.    Given Jury Findings And Claims Of Mere Negligence, National
               Union Cannot Meet Oregon's Subjective Intent To Injure Standard ........ 6

        2.    Colorado Law Likewise Extends Coverage For The Negligent
               Conduct At Issue Here ........................................................................... 10

    B.    The Professional Services Exclusions Do Not Apply ........................................ 13

        1.    The Intent Of The Professional Services Exclusions Is To Avoid
               Professional Malpractice Liability, Not Liability For Sexual Abuse ...... 13

        2.    Additional Exceptions And Ambiguities In The Patient Injury
               Exclusion Preclude Its Application Here .................................................. 17

        3.    There Is No Authority For Applying The Professional Services
               Exclusions To The Haszard Litigation ..................................................... 19

    C.    Oregon Law Applies To This Insurance Coverage Dispute ............................... 20

        1.    National Union Concedes That Oregon Law Applies To All Issues
               Other Than The Definition Of Occurrence .............................................. 20

        2.    There Is No "Actual Conflict" Between Oregon And Colorado
               Law Regarding The Definition Of Occurrence ....................................... 21

        3.    Any "Conflict" Between Oregon And Colorado Law Is A False
               Conflict Because Colorado Has No Substantial Interest At Stake ......... 22

        4.    Because It Is The Principal Location Of The Insured Risk, Oregon
               Has The Most Substantial Interest In And Significant Relationship
               To The Coverage Issues Presented Here ................................................. 26

        5.    Other Contacts Demonstrate That Oregon Has The Only
               Substantial Interest In The Coverage Issues Here ................................... 30

        6.    National Union Cannot Legitimately Object To Application Of
               Oregon Law To Oregon Liabilities .......................................................... 31

    D.    Outstanding Discovery Mandates Denial Of National Union's Summary
        Judgment Motion ...................................................................................... 33

IV.    CONCLUSION ................................................................................................ 35

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Albertson's, Inc. v. Great S.W. Fire Ins. Co.*,
    732 P.2d 916 (Or. Ct. App. 1987) ............................................................................6

*Allstate Ins. Co. v. Fulmer,*
    No. 04-3019, 2004 WL 2647624 (D. Or. Nov. 19, 2004) ...............................5, 6, 22

*Allstate v. Stone*,
    876 P.2d 313 (Or. 1994) .......................................................................................6

*Am. States Ins. Co. v. Bercot*,
    No. 03-637-CO, 2004 U.S. Dist. LEXIS 13057 (D. Or. July 1, 2004) .....................4

*American Cas. Co. v. Corum*,
    910 P.2d 1151 (Or. Ct. App. 1996) .......................................................................16

*Angelini v. Delaney*,
    966 P.2d 223 (Or. Ct. App. 1998) ...............................................................20, 21, 22

*Beggs v. Pac. Mut. Life Ins. Co.*,
    318 S.E.2d 836 (Ga. Ct. App. 1984) ....................................................................19

*Beltway Mgmt. Corp. v. Lexington-Landmark Ins. Co.*,
    746 F. Supp. 1145 (D.D.C. 1990) .........................................................................32

*Blackhawk-Cent. City Sanitation Dist. v. American Guar. & Liab. Ins. Co.*,
    214 F.3d 1183 (10th Cir. 2000) .............................................................10, 11, 13, 22

*Burlington N. Santa Fe R.R. Co. v. Assiniboine and Sioux Tribes*,
    323 F.3d 767 (9th Cir. 2003) .................................................................................33

*Chase v. Weight*,
    No. 87-570, 1988 U.S. Dist. LEXIS 11566 (D. Or. Oct. 12, 1988).........................30

*Cincinnati Ins. Co. v. Taylor-Morley, Inc.*,
    556 F. Supp. 2d 908 (S.D. Ill. 2008).................................................................28, 31

*City of Salem v. HSB*,
    733 P.2d 890 (Or. 1987) ........................................................................................30

*Colard v. American Family Mut. Ins. Co.*,
    709 P.2d 11 (Colo. App. 1985) .............................................................10, 13, 22

*Country Mut. Ins. Co. v. Larson,*
  No. 08-6154, 2010 WL 1039790 (D. Or. Feb. 26, 2010) ....................................7, 22

*Dabbs v. Silver Eagle Mfg. Co.,*
  779 P.2d 1104 (Or. Ct. App. 1989)......................................................................23

*Daughters of Charity Nat'l Health Sys. v. Am. Int'l Group,*
  No. 04-CV-754, 2006 WL 897154 (E.D. Mo. Mar. 30, 2006)...............................27

*Davis v. State Farm Mutual,*
  507 P.2d 9 (Or. 1973) .......................................................................................32

*Diamond Int'l Corp. v. Allstate Ins. Co.,*
  712 F.2d 1498 (1st Cir. 1983).............................................................................27

*Erwin v. Thomas,*
  506 P.2d 494 (Or. 1973) ...............................................................................23, 26

*Fox v. Country Mut. Ins.,*
  964 P.2d 997 (Or. 1998) ......................................................................................6

*Franceschi v. Am. Motorists Ins. Co.,*
  852 F.2d 1217 (9th Cir. 1988) ............................................................................19

*Frost v. Lotspeich,*
  30 P.3d 1185 (Or. Ct. App. 2001).......................................................................33

*Garrett v. City & County of San Francisco,*
  818 F.2d 1515 (9th Cir. 1987) ............................................................................33

*Gates Formed Fibre Prods., Inc. v. Plasti-Vac, Inc.,*
  687 F. Supp. 688 (D. Me. 1988) ....................................................................28, 31

*Gold v. Casserly Landscape, Inc.,*
  801 P.2d 844 (Or. Ct. App. 1990).......................................................................17

*Head v. Central Reserve Life of N. Am. Ins. Co.,*
  845 P.2d 735 (Mont. 1993) ................................................................................19

*Hecla Mining Co. v. New Hampshire Ins. Co.,*
  811 P.2d 1083 (Colo. 1991)...........................................................................11, 13

*Hedmann v. Liberty Mutual Fire Insurance Co.,*
  974 P.2d 755 (Or. Ct. App. 1999).......................................................................16

*Hirst v. St. Paul Fire & Marine Insurance Co.,*
  683 P.2d 440 (Idaho Ct. App. 1984)...............................................................15, 16

*Home Poker Unltd., Inc. v. Cooper*,
    No. 09-CV-460, 2009 WL 5066653 (D. Or. Dec. 15, 2009) ......................................21, 22, 23

*Hunter v. Farmers Ins.*,
    898 P.2d 201 (Or. Ct. App. 1995) ................................................................................6

*In re Aquaslide 'N' Dive Corp.*,
    85 B.R. 545 (9th Cir. 1987) ..........................................................................5, 24

*Ind. Comprehensive Health Ins. Ass'n v. Dye*,
    531 N.E.2d 505 (Ind. Ct. App. 1988).........................................................................19

*Integra Telecom, Inc. v. Twin City Fire Ins. Co.*,
    No. 08-906-AA, 2010 U.S. Dist. LEXIS 44713 (D. Or. Apr. 27, 2010) ..................................5

*Iowa Nat'l Mut. Ins. Co. v. C&S Genetics, Inc.*,
    No. 84-940, 1986 WL 7822 (D. Colo. July 8, 1986) ............................................................10

*Klamath Pac. Corp. v. Reliance Ins. Co.*,
    955 P.2d 340 (Or. Ct. App. 1998) ................................................................................6

*Kraft v. Arden*,
    No. 07-487, 2008 WL 4866182 (D. Or. Nov. 7, 2008) ....................................................21, 25

*Krause v. Washington Nat'l Ins. Co.*,
    468 P.2d 513 (Or. 1970) ................................................................................................25

*Lilienthal v. Kaufman*,
    395 P.2d 543 (Or. 1964) ........................................................................................23, 25

*Malbco Holdings, LLC v. Amco Ins. Co.*,
    No. 08-858, 2008 WL 5205202 (D. Or. Dec. 11, 2008).....................................................26

*Marx v. Hartford Accident and Indemnity Co.*,
    157 N.W.2d 870 (Neb. 1968)....................................................................................14, 16

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001) ........................................................................................33

*Miller v. Tabor West Inv. Co.*,
    196 P.3d 1049 (Or. Ct. App. 2008)..................................................................................8

*Mountain States Mutual Casualty Co. v. Hauser*,
    221 P.3d 56 (Colo. App. 2009).............................................................................12, 13, 21

*Multnomah County v. Oregon Auto. Ins. Co.*,
    470 P.2d 147 (Or. 1970) ............................................................................................16

*Mut. Life Ins. Co. v. Bishop*,
  209 S.E.2d 223 (Ga. Ct. App. 1974)..................................................................19

*Mutual of Enumclaw Ins. Co. v. Gutman*,
  21 P.3d 101 (Or. Ct. App. 2001).....................................................................6

*National Union Fire Ins. Co. v. Standard Fusee Corp.*,
  917 N.E.2d 170 (Ind. Ct. App. 2010)..........................................................28, 32

*Neilsen v. St. Paul Cos.*,
  583 P.2d 545 (Or. 1978) ..................................................................................6

*North Clackamas Sch. Dist. v. Or. Sch. Bds. Ass'n Prop. & Cas. Trust*,
  991 P.2d 1089 (Or. Ct. App. 1999)...............................................................7, 10

*P.W. Stephens Contractors, Inc. v. Mid-Am. Indem. Ins. Co.*,
  805 F. Supp. 854 (D. Haw. 1992) ..................................................................32

*Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co.*,
  863 F. Supp. 1237 (D. Nev. 1994) .................................................................27

*Portland Trailer & Equip., Inc. v. A-1 Freeman Moving & Storage, Inc.*,
  49 P.3d 803 (Or. Ct. App. 2002)...................................................................33

*R.W. v. Schrein*,
  652 N.W.2d 574 (Neb. 2002).......................................................................14, 15

*Republic Ins. Co. v. Smith*,
  No. 88-1949, 1989 WL 78162 (D. Colo. July 14, 1989) .........................11, 13, 22

*Schutt v. Farmers Ins. Group*,
  879 P.2d 1303 (Or. Ct. App. 1994).................................................................20

*Sims Snowboards, Inc. v. Kelly*,
  863 F.2d 643 (9th Cir. 1988) ..........................................................................33

*Snyder v. Nelson*,
  564 P.2d 681 (Or. 1977) ..................................................................................6

*Spirit Partners v. Stoel Rives*,
  157 P.3d 1194 (Or. Ct. App. 2007).................................................................20

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props.*,
  467 F.3d 107 (2d Cir. 2006)............................................................................18

*St. Paul Fire & Marine Ins. Co. v. Alderman*,
  455 S.E.2d 852 (Ga. Ct. App. 1995)..............................................................15

*St. Paul Ins. Co. of Illinois v. Cromeans*,
  771 F. Supp. 349 (N.D. Ala. 1991) ..................................................................15

*Stanford v. Am. Guar. Life Ins. Co.*,
  571 P.2d 909 (Or. 1977) ......................................................................19, 20

*Stricklin v. Soued*,
  936 P.2d 398 (Or. Ct. App. 1997) ..................................................................33

*TIG Ins. Co. v. Travelers Ins. Co.*,
  No. 00-1780, 2003 WL 24051560 (D. Or. Mar. 24, 2003) .................................7, 10

*United Pac. Ins. Co. v. Truck Ins. Exch.*,
  541 P.2d 448 (Or. 1975) ..............................................................................20

*Visa Int'l Serv. Ass'n v. Bankcard Holders of Am.*,
  784 F.2d 1472 (9th Cir. 1986) .......................................................................33

*Waller v. Auto-Owners Ins. Co.*,
  26 P.3d 845 (Or. Ct. App. 2001) ..............................................................21, 22

*Walthers v. Travelers Cas. & Sur. Co.*,
  No. 98-805, 1999 U.S. Dist. LEXIS 16071 (D. Or. June 10, 1999) ....................7, 10

*Wichita Falls Office Assoc. v. Banc One Corp.*,
  978 F.2d 915 (5th Cir. 1992) .........................................................................33

## STATUTES

Or. Rev. Stat. § 124.100(5) ...............................................................................8

## OTHER AUTHORITIES

3 Allan D. Windt *Insurance Claims and Disputes* § 11:16 (5th ed. 2007) .....................15

*Appleman on Insurance* § 4505 ...................................................................13, 19

Fed. R. Civ. P. 26(a)(1) ...............................................................................24, 29

Fed. R. Civ. P. 30(b)(6) ..................................................................................34

Fed. R. Civ. P. 56(e) ........................................................................................5

Fed. R. Civ. P. 56(f) ...................................................................................2, 33

Or. R. Civ. P. 36B(2)(a) ..................................................................................29

Restatement (Second) Conflict of Laws § 188 .....................................................25

Restatement (Second) Conflict of Laws § 193 ........................................................................26, 29

Webster's II *New College Dictionary* 662 (1995) ........................................................................17

## I.    <u>INTRODUCTION</u>

The motion filed by Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") seeking summary judgment on its liability to Plaintiffs American Medical Response, Inc. ("AMR") and American Medical Response Northwest, Inc. ("AMR Northwest") under National Union's 2007-08 Commercial Umbrella Liability Policy ("National Union Policy") ignores the record, applies the wrong law, and disregards National Union's outstanding discovery obligations.

*Neither the definition of "occurrence" nor the "expected or intended injury" exclusion precludes coverage.*  National Union has failed in its burden to demonstrate that AMR or AMR Northwest acted with subjective intent to injure.  The allegations of negligent conduct by AMR and AMR Northwest constitute covered occurrences not excluded as intentional acts under Oregon or Colorado law.  The lone underlying jury verdict finds negligent conduct alone.

*The "professional services" exclusions do not apply.*  National Union has failed in its burden to demonstrate, as a matter of law, that the underlying injuries arose out of medical care as required to invoke the "professional services" exclusions.  Courts widely agree that sexual assault is not medical care and, in similar circumstances, refuse to apply these exclusions.

*Oregon, not Colorado, law applies to the National Union Policy*.  National Union has failed in its burden to identify a true conflict between Oregon and Colorado law, and absent a true conflict, Oregon law controls.  Colorado has no interest in a dispute involving policies issued by out-of-state insurers from their out-of-state offices.  As the location of the insured risk, Oregon has the sole real and substantial interest in applying its law to liability arising out of the *Oregon* operations of an *Oregon* corporation with regard to litigation filed in *Oregon* state courts alleging injury to *Oregon* residents.

***Outstanding discovery mandates denial of National Union's motion.*** Although it has moved for summary judgment, National Union has objected to Plaintiffs' discovery requests, refusing to produce relevant and responsive documents and deposition testimony. Rule 56(f) of the Federal Rules of Civil Procedure precludes summary judgment at this time.

## II.    <u>FACTUAL BACKGROUND</u>

Plaintiffs AMR and AMR Northwest filed this insurance coverage action against National Union because it unreasonably denied coverage under the National Union Policy, refusing to defend and indemnify Plaintiffs in connection with five underlying lawsuits filed against Plaintiffs in Oregon state court. The five underlying lawsuits allege, *inter alia*, negligence and negligent violations of Oregon's Vulnerable Person Statute arising out of claimed sexual abuse by Lannie Haszard, an employee of AMR Northwest in Oregon. *See* Mederos Decl., Exs. 14-18 (Complaints).

AMR Northwest is an Oregon corporation operating ambulance services out of its headquarters in Portland, Oregon. *See* Mederos Decl. ¶ 4; Lauer Decl. ¶¶ 3-5. AMR Northwest and its predecessors have operated in Oregon since at least 1968. Mederos Decl. ¶ 4. AMR Northwest is the 911 provider in Multnomah, Josephine, and Clackamas Counties and services more than 1 million Oregon residents. Lauer Decl. ¶ 4. Through its Oregon operations, AMR Northwest employs more than 650 people. *Id*.

Mr. Haszard began working in 1991 as a paramedic for a predecessor of AMR Northwest in Multnomah County, Oregon. *Id*. at ¶ 6. For fifteen years, Mr. Haszard had an acceptable work record and no indication of aberrant behavior. *Id*. at ¶¶ 8-9. Mr. Haszard transported many hundreds of clients with no alleged misconduct like the sexual abuse at issue here. Mr. Haszard, instead, received 23 commendations from transportees. *Id*.

On February 13, 2006, AMR Northwest received a customer satisfaction survey from a woman, Rebecca Whalen, who complained that Mr. Haszard had stared at her and failed to provide adequate privacy while a nurse assistant was helping her into a gown.  *Id*. at ¶ 15.  When AMR Northwest investigated, Ms. Whalen downplayed the incident, and Mr. Haszard denied acting inappropriately.  *Id*.  Prior to Mr. Haszard's termination, Ms. Whalen never alleged physical touching.  *Id*.  AMR Northwest counseled Mr. Haszard, who agreed to continue to be sensitive to privacy needs.  *Id*.

In December 2006 and March 2007, AMR Northwest received complaints that Mr. Haszard made inappropriate physical contact with women, Betty Rotting and Paula Pries, while being transported within Oregon in AMR Northwest ambulances.  *Id*. at ¶¶ 16-18.  AMR Northwest investigated both complaints and found them to be unsubstantiated.  *Id*.  The ambulance drivers present at the time of the allegedly inappropriate contact reported that they did not see or hear anything to substantiate the complaints.  *Id*.  Ms. Rotting's concerns appeared to involve appropriate actions related to her condition and need for transport.  *Id*. at ¶ 17.  A police officer concurred that the complaint from Ms. Pries was unsupported.  *Id*. at ¶ 18.

On December 8, 2007, Royshekka Herring complained to AMR Northwest personnel that Mr. Haszard made unwanted sexual contact with her while she was being transported in an AMR ambulance in Multnomah County.  AMR Northwest immediately removed Mr. Haszard from duty, investigated the incident, and accepted Mr. Haszard's resignation.  *Id*. at ¶ 19.  AMR Northwest was aware of no other instances of claimed sexual assault by Mr. Haszard prior to termination of his employment.  *Id*. at ¶¶ 13-14, 20.

Subsequently, Ms. Herring filed suit against AMR and AMR Northwest in the Circuit Court for Multnomah County, Oregon.  *See* Mederos Decl., Ex. 14.  The *Herring* lawsuit

proceeded through trial, and ultimately, the jury found AMR and AMR Northwest jointly liable for negligence and determined that AMR Northwest violated Oregon's Vulnerable Person Statute, a statute which the *Herring* judge determined was violated by negligence alone. Mederos Decl. ¶ 17; *Id.* at  Ex. 26 (*Herring* JNOV Order); *Id.* at Ex. 22 (*Herring* Jury Verdict). The compensatory damages award totaled $3.25 million, but the *Herring* jury refused to award punitive damages.  Mederos Decl. ¶ 16; *Id.* at Ex. 23 (*Herring* Punitive Damages Verdict).

As relevant to the National Union Policy, four other women, Stacey Webb, Hazel Corning, Charlesetta Lucas, and Carolyn Hines, filed similar lawsuits against AMR or AMR Northwest in Multnomah County.  Mederos Decl., Exs. 15-18.  AMR and AMR Northwest were unaware of any allegations of sexual assault involving these four women before termination of Mr. Haszard's employment.  Lauer Decl. ¶¶ 20-21.  The *Webb*, *Corning*, and *Lucas* lawsuits remain pending in Oregon state court.  Plaintiffs settled the *Hines* litigation.  Mederos Decl. ¶ 12.

The National Union Policy, covering Emergency Medical Services Corporation ("EMSC"), the parent company of AMR and AMR Northwest, provides general liability coverage to AMR and AMR Northwest, after the limits of an underlying policy are exhausted, for occurrences during the 2007-08 policy period.  Doc. No. 58-2 (Skinner Decl. Ex. A (National Union Policy)).  The National Union Policy is part of an overall insurance program for EMSC and its subsidiaries that is intended to provide seamless coverage for all types of liability that the entities may incur.  Thackery Decl. ¶¶ 16-19; Mederos Decl. ¶ 8.  A third party broker, AON Risk Services ("AON"), negotiated the National Union Policy on behalf of EMSC and its subsidiaries.  Thackery Decl. ¶ 4.

## III.    <u>ARGUMENT</u>

National Union, as the party moving for summary judgment, bears a heavy burden of demonstrating the absence of any genuine issue of material fact. *Am. States Ins. Co. v. Bercot*,

No. 03-637-CO, 2004 U.S. Dist. LEXIS 13057, at **10-11 (D. Or. July 1, 2004).  In assessing National Union's summary judgment motion, all reasonable doubts should be resolved against National Union, and all inferences drawn from the facts must be viewed in the light most favorable to Plaintiffs.  *Integra Telecom, Inc. v. Twin City Fire Ins. Co.*, No. 08-906-AA, 2010 U.S. Dist. LEXIS 44713, at *6 (D. Or. Apr. 27, 2010).  Any affidavits supporting summary judgment must be based on personal knowledge and set forth facts admissible in evidence.  Fed. R. Civ. P. 56(e); *In re Aquaslide 'N' Dive Corp.*, 85 B.R. 545, 547 (9th Cir. 1987).

A.    **ISSUES OF FACT ON THE SUBJECTIVE INTENT OF AMR AND AMR NORTHWEST PRECLUDE SUMMARY JUDGMENT.**

National Union argues that there is no coverage because the Haszard lawsuits allege intentional conduct falling outside the policy's definition of "occurrence," *see* Doc. No. 57 (Summ. J. Mem.) at 16-23, and within the "expected or intended injury" exclusion.  *Id.* at 28-30. National Union's argument fails because there is no evidence that AMR or AMR Northwest, as opposed to Mr. Haszard, engaged in intentional conduct.  At most, one jury found that AMR and AMR Northwest acted negligently.  There is no dispute, under Oregon or Colorado law, that negligence qualifies as a covered occurrence and is not excluded by an expected or intended injury exclusion.[1]

_____

[1] Although not clearly stated in its brief, National Union presumably seeks a declaration that it has no duty to defend *and* no duty to indemnify.  However, the duty to defend and duty to indemnify are not co-extensive and different standards apply.  *E.g.*, *Allstate Ins. Co.  v. Fulmer,* No. 04-3019, 2004 WL 2647624, at *6 (D. Or. Nov. 19, 2004).  National Union ignores these distinct standards in its brief, as well as the differing procedural postures of the five underlying lawsuits.

There can be no doubt that, upon exhaustion of underlying limits, based on the pleadings, National Union owes a duty to defend relevant lawsuits.  *See* discussion *infra* at 6-20.  The real issue addressed here is whether National Union must indemnify AMR and AMR Northwest on the adjudicated *Herring* claim and the settled *Hines* claim.

      **1.**      **Given Jury Findings And Claims Of Mere Negligence, National Union Cannot Meet Oregon's Subjective Intent To Injure Standard.**

The National Union Policy defines "occurrence" as an "accident." Doc. No. 58-2 (Skinner Decl. Ex. A (National Union Policy)) at NU 00302. Under Oregon law, an "accident" exists, unless the insured subjectively intended to cause injury. *Mutual of Enumclaw Ins. Co. v. Gutman*, 21 P.3d 101, 105 (Or. Ct. App. 2001). When analyzing coverage for an insured employer arising from the intentional acts of an employee, Oregon courts look to the intent of the insured employer, not the employee. *Albertson's, Inc. v. Great S.W. Fire Ins. Co.*, 732 P.2d 916, 918 (Or. Ct. App. 1987). The same standard applies to the "expected or intended injury" exclusion. *See Klamath Pac. Corp. v. Reliance Ins. Co.*, 955 P.2d 340, 341 (Or. Ct. App. 1998).

Oregon courts have found intent to injure, as a matter of law, only where such an intent is inherent in the insured's conduct. *Neilsen v. St. Paul Cos.*, 583 P.2d 545, 547-48 (Or. 1978); *Hunter v. Farmers Ins.*, 898 P.2d 201, 207-08 (Or. Ct. App. 1995). Otherwise, the matter of intent is a fact question, even where the consequences of the insured's actions seem all but certain. *Snyder v. Nelson*, 564 P.2d 681, 684-85 (Or. 1977); *Fox v. Country Mut. Ins.*, 964 P.2d 997, 1005 (Or. 1998) (subjective intent found as a matter of law only if insured "engaged in an act so certain to cause a particular kind of harm that the court will say that the insured intended the harm"); *Allstate v. Stone*, 876 P.2d 313, 314-15 (Or. 1994) ("[T]he court should only infer that the insured had a subjective intent to cause harm . . . as a matter of law when such subjective intent is the only reasonable inference that may be drawn from the insured's conduct.").

Allegations that an insured "knew or should have known his action would cause the injury, do not establish that [the insured] had a subjective intent to cause the harm." *Fulmer*, 2004 WL 2647624, at **4-5. Negligent supervision and other claims alleging that an insured acted negligently and "knew or should have known" of the alleged harm, therefore, are covered

occurrences. *Country Mut. Ins. Co. v. Larson,* No. 08-6154, 2010 WL 1039790, at **3-4 (D. Or. Feb. 26, 2010). Thus, courts applying Oregon law have repeatedly found claims of employer negligence or vicarious liability arising from sexual abuse by an employee to be covered occurrences. *See North Clackamas Sch. Dist. v. Or. Sch. Bds. Ass'n Prop. & Cas. Trust,* 991 P.2d 1089, 1091-92 (Or. Ct. App. 1999); *TIG Ins. Co. v. Travelers Ins. Co.*, No. 00-1780, 2003 WL 24051560, at **2-3 (D. Or. Mar. 24, 2003); *Walthers v. Travelers Cas. & Sur. Co.*, No. 98-805, 1999 U.S. Dist. LEXIS 16071, at **14-17 (D. Or. June 10, 1999).[2]

Applying these standards, the underlying claims brought against AMR and AMR Northwest qualify as covered occurrences and are not excluded by the expected or intended injury provision of the National Union Policy. First, three of the underlying complaints incorporate independent negligent supervision claims against AMR and AMR Northwest. Mederos Decl., Ex. 17 (*Lucas* Sec. Am. Compl.) at ¶¶ 8, 12 (alleging what AMR and AMR Northwest "knew or had reason to know"); *Id.* at Ex. 14 (*Herring* Sixth Am. Compl.) at ¶¶ 8, 12 (same); *Id.* at Ex. 16 (*Hines* Compl.) at ¶¶ 13, 24 (same). The *Herring* jury was instructed on negligence. Mederos Decl. ¶ 15; *Id.* at Ex. 21 (*Herring* Jury Instructions). Under Oregon law, these claims constitute covered occurrences. *See, e.g.*, *North Clackamas*, 991 P.2d at 1091-92; *TIG Ins. Co.*, 2003 WL 24051560, at **2-3; *Walthers*, 1999 U.S. Dist. LEXIS 16071, at **14-17.

Four of the five underlying complaints also allege violation of Oregon's Vulnerable Person Statute. *See* Mederos Decl., Ex. 14 (*Herring* Sixth Am. Compl.) at ¶¶ 14-17; *see also id.* at Exs. 15-16, 18 (*Webb*, *Corning*, *Hines* Complaints). An employer violates that statute when the employer "knowingly acts *or fails to act under circumstances in which a reasonable person*

---

[2] As discussed in *Walthers*, claims of negligent supervision or vicarious liability against an employer for alleged sexual acts of an employee can be distinguished from claims made against the alleged assaulter, in particular where the alleged victims are minors, which is not the circumstance here. *See* 1999 U.S. Dist. LEXIS 16071, at **15-16.

*should have known of*" the claimed physical abuse.  Or. Rev. Stat. § 124.100(5) (emphasis added).  The *Herring* trial court held that "[a] person violates the Vulnerable Person Abuse statute when they negligently fail to prevent another from abusing a vulnerable person." Mederos Decl. ¶ 17; *Id.* at Ex. 26 (*Herring* JNOV Order) at 4.  The *Herring* court thus held that mere negligence – measured by "a reasonable person" standard – is all that is required for the statutory abuse claim.  *See id.* (citing *Miller v. Tabor West Inv. Co.*, 196 P.3d 1049, 1059 (Or. Ct. App. 2008) (statute requires only "that defendants failed to act to prevent an assault that a reasonable person should, under the circumstances, have known that [alleged assaulter] would commit")).

The allegations of vulnerable person abuse in the five underlying complaints relevant to the National Union Policy conform to this minimal negligence standard.  *See* Mederos Decl., Exs. 15, 18 (*Webb* & *Corning* Compls.) at ¶ 6 ("AMR Northwest . . . knew and had reason to know . . . ."); *Id.* at Ex. 14 (*Herring* Sixth Am. Compl.) at ¶ 16; *Id.* at Ex. 16 (*Hines* Compl.) at ¶ 13.  As does the relevant *Herring* statutory jury instruction.  Mederos Decl., Ex. 21 (*Herring* Jury Instructions) at AMR PLS 0000933.  And, the *Herring* jury ultimately imposed liability against AMR and AMR Northwest for negligence and against AMR Northwest for "knowingly acting or failing to act under circumstances in which a reasonable person should have known of the sexual (physical) abuse."  *Id.* at Ex. 22 (*Herring* Jury Verdict); *Id.* at Ex. 26 (*Herring* JNOV Order) at 5.  The *Herring* jury rejected punitive damages claims, finding a lack of subjective intent to injure by AMR or AMR Northwest.  *Id.* at Ex. 23 (*Herring* Punitive Damages Verdict).

The evidence of AMR Northwest's conduct is consistent with unintentional and unexpected injury.  AMR Northwest and its predecessor employed Mr. Haszard from November 1991 to December 2007, a period of sixteen years.  Lauer Decl. ¶ 6.  During his employment

with AMR Northwest, Mr. Haszard's performance was evaluated by AMR Northwest on an annual basis.  *Id.* at ¶ 8.  Mr. Haszard had an acceptable work record with no indication of aberrant behavior.  *Id.* at Ex. 8 (Haszard Evaluations).  Mr. Haszard transported hundreds of clients with no claims of sexual abuse and received 23 commendations.  Lauer Decl. ¶ 8.  AMR Northwest also issued policies and conducted training to inform its employees, like Mr. Haszard, that any misconduct toward clients, including misconduct of a sexual nature, is strictly prohibited. *Id.* at ¶ 10; *see also Id.* at Ex. 10 (Harassment Prevention); *Id.* at Ex. 11 (EMSC Employee Handbook) at 19; *Id.* at Ex. 12 (AMR OR & SW Wash. Policies & Procedures) at 29.

AMR Northwest received a customer satisfaction survey in February 2006 claiming that Mr. Haszard failed to provide sufficient privacy for a female client, but AMR Northwest received only two complaints alleging inappropriate physical contact by Mr. Haszard prior to his termination.  Lauer Decl. ¶¶ 15-21.  AMR Northwest investigated both incidents and found insufficient evidence to substantiate the complaints.  *Id.*; *see also id.* at Exs. 13-15 (Rotting Incident Reports).  The ambulance drivers present at the time of the alleged incidents reported that they did not see or hear anything to substantiate the complaints.  *Id.* at Exs. 14, 16 (Rotting & Pries Reports).  The acts underlying the first complaint appeared appropriately related to the client's condition and need for transport.  Lauer Decl. ¶ 17.  An investigating police officer concurred with AMR Northwest's conclusion on the second incident, stating that "there are no tangible leads, physical or forensic evidence" to substantiate the claim.  Lauer Decl. ¶ 18; *Id.* at Ex. 16 (Pries Police Report).  When AMR Northwest received a third complaint in December 2007, AMR Northwest immediately notified the police, removed Mr. Haszard from his job duties, and accepted Mr. Haszard's resignation.  Lauer Decl. ¶ 19; *see also* Mederos Decl., Ex. 25 (AMR Defs.' Mot. for Directed Verdict).

As the record demonstrates, there are substantial outstanding issues of fact as to the subjective intent of AMR and AMR Northwest in the continued employment of Mr. Haszard. Under these circumstances, Oregon law dictates that the issue of the subjective intent of AMR and AMR Northwest is for the trier of fact.  Summary judgment for National Union on the definition of occurrence and the expected or intended injury exclusion would be improper.  *See, e.g.*, *North Clackamas*, 991 P.2d at 1091-92 (intentional sexual assault by employee not excluded intentional act by employer); *TIG Ins. Co.*, 2003 WL 24051560, at **2-3 ("[C]laims of negligence against an employer arising from sexual abuse by an employee [] fall within coverage for an 'occurrence.'"); *Walthers*, 1999 U.S. Dist. LEXIS 16071, at **14-17 ("[Insured's] intent is an issue for a fact-finder, not this court.").

### 2.      Colorado Law Likewise Extends Coverage For The Negligent Conduct At Issue Here.

The result would be the same, even if National Union were correct (and it is not) that Colorado law regarding occurrences applies.  National Union agrees:  "The outcome under Oregon law should be no different" than under Colorado law.  Doc. No. 57 (Summ. J. Mem.) at 21, 30.

Under Colorado law, "the term 'occurrence' is to be broadly construed against the insurer."  *Colard v. American Family Mut. Ins. Co.*, 709 P.2d 11, 13 (Colo. App. 1985).  Just as in Oregon, Colorado provides that occurrences are covered, and not excluded under the "expected or intended injury" exclusion, unless the insured subjectively intended harm.  *See, e.g.*, *Blackhawk-Cent. City Sanitation Dist. v. American Guar. & Liab. Ins. Co.*,  214 F.3d 1183, 1193 (10th Cir. 2000) ("'To deny coverage, then, the fact finder must find that the insured intended to cause damage.'") (quoting *City of Johnstown v. Bankers Std. Ins. Co.*, 877 F.2d 1146, 1150 (2d Cir. 1989)); *Iowa Nat'l Mut. Ins. Co. v. C&S Genetics, Inc.*, No. 84-940, 1986 WL 7822 (D.

Colo. July 8, 1986) ("[A]n occurrence-type policy should be read to exclude coverage only for those injuries expected or intended from the standpoint of the insured.").

The law in Colorado is that "damages are only intended if the insured knew that they would flow directly and immediately from the insured's intentional act." *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1088 (Colo. 1991). Ordinary negligence does not equate with an intention to cause damage; nor does a calculated risk amount to an expectation of damage. *Blackhawk-Cent.*, 214 F.3d at 1193. Thus, the Colorado Supreme Court, in *Hecla Mining Co.*, held that:

> It is not enough that an insured was warned that damages might ensue from its actions, or that, once warned, an insured decided to take a calculated risk and proceed as before. Recovery will be barred only if the insured intended the damages, or if it can be said that the damages were, in a broader sense, "intended" by the insured because the insured knew that the damage would flow directly and immediately from its intentional act.

811 P.2d at 1088 (quoting *City of Johnstown*, 877 F.2d at 1150); *accord Republic Ins. Co. v. Smith*, No. 88-1949, 1989 WL 78162, at *2 (D. Colo. July 14, 1989) (whether insured expected or intended action is a question of fact). Complaints incorporating allegations of both intentional and negligent conduct are covered. *Blackhawk-Cent.*, 214 F.3d at 1193.

In light of this standard, for all of the reasons articulated under Oregon law, the National Union Policy provides coverage to AMR and AMR Northwest for the Haszard litigation. *See* discussion *supra* at 6-10. The underlying complaints allege negligent conduct, and the *Herring* jury imposed liability for negligence alone, rejecting claims for punitive damages. *Id*. The evidence of AMR and AMR Northwest's conduct shows unintentional and unexpected injury. *Id*.

The cases cited by National Union are inapplicable here. *See* Doc. No. 57 (Summ. J. Mem.) at 28-29. National Union, for example, cites four cases denying coverage to a person who actually engaged in assault. *Id*. (citing *American Family Mut. Ins. Co. v. Johnson*, 816 P.2d

952, 955-57 (Colo. 1991) (addressing insured that "intended to inflict injuries upon his wife" and, in fact, assaulted another person); *Allstate Ins. Co. v. Troelstrup*, 789 P.2d 415, 416 (Colo. 1990) (addressing insured "who has been convicted of sexual assault on a child")). These cases say nothing about the intent of an insured employer whose employee allegedly engaged in assault or the availability of coverage to that insured employer, as opposed to the individual assaulter.

And, the decision in *Mountain States Mutual Casualty Co. v. Hauser*, 221 P.3d 56 (Colo. App. 2009), does not preclude coverage. *Hauser* holds that there is no covered occurrence when an employer willfully and wantonly allows an employee to assault another person. *Id*. at 58, 61. The *Hauser* court relied on an underlying adjudication – after an evidentiary hearing – that both the employee engaging in sexual assault *and* the employer acted intentionally. *Id*. at 61 ("The trial court [in the underlying action] determined that evidence presented by Hauser at a damages hearing supported her various claims as well as her contention that [the employer] acted willfully and wantonly."). "Under such circumstances," the *Hauser* court concluded that the negligent supervision claim, which actually stemmed from the employer's proven intentional conduct, was not a covered occurrence. *Id*. The *Hauser* court did not decide "whether an injury resulting from the foreseeable harm in a negligent hiring or supervision case could ever be found to be 'unexpected' under an insurance policy provision in different circumstances." *Id*. The *Hauser* court, instead, acknowledged the limitations in its holding "based on the facts and determinations of the trial court as set forth above." *Id*.

Here, in contrast to the employer in *Hauser*, no employer has been adjudicated liable for intentional or willful conduct in its supervision of Mr. Haszard. The *Herring* jury found that AMR and AMR Northwest acted negligently. *See* Mederos Decl. ¶ 16; *Id*. at Ex. 22 (*Herring* Jury Verdict). The *Herring* judge applied a negligence standard to the statutory claim. Mederos

Decl. ¶ 17; *Id.* at Ex. 26 (*Herring* JNOV Order).  The *Herring* jury rejected plaintiff's claims of

willful conduct by AMR and AMR Northwest and refused to award punitive damages.  *See*

Mederos Decl., Ex. 23 (*Herring* Punitive Damages Verdict).  Other complaints against AMR and

AMR Northwest allege negligence.  *See* Mederos Decl., Ex. 17 (*Lucas* Sec. Am. Compl.) at ¶¶ 7-

12; *Id.* at Ex. 16 (*Hines* Compl.) at ¶¶ 23-25; *Id.* at Ex. 15 (*Webb* Compl.) at ¶ 6.  *Hauser* does

not apply.  No Colorado case precludes coverage for negligent supervision in the context of an

employer's *negligent* conduct or *negligent* violation of Oregon's Vulnerable Person Statute.

Colorado precedent, including the Colorado Supreme Court's decision in *Hecla Mining Co.*,

extends coverage.  811 P.2d at 1088; *see also Blackhawk-Cent.*, 214 F.3d at 1193; *Republic*,

1989 WL 78162, at *2; *Colard*, 709 P.2d at 13.

### B.    THE PROFESSIONAL SERVICES EXCLUSIONS DO NOT APPLY.

National Union next attempts to invoke three policy exclusions added by endorsements

(collectively, "Professional Services Exclusions").  *See* Doc. No. 57 (Summ. J. Mem.) at 23-28.

National Union, however, overreads the exclusions.  Each is designed to preclude coverage for

liability arising from legitimate medical activities.  Courts have widely found these exclusions do

not bar coverage for the types of claims alleged in the Haszard lawsuits because the alleged

injuries arose from claimed sexual abuse, not from legitimate medical treatment or care.

### 1.    The Intent Of The Professional Services Exclusions Is To Avoid Professional Malpractice Liability, Not Liability For Sexual Abuse.

The clear intent of professional services exclusions in general liability policies, like the

National Union Policy, is to assign claims for professional activities to malpractice insurance

policies, not general liability policies.  *See* 7af-190f *Appleman on Insurance* § 4505

("Malpractice Exclusions" exist in CGL policies because "[p]rofessional activities require a

separate line of insurance").  Thus, each of the Professional Services Exclusions in the National

Union Policy applies to liability arising from injuries caused by professional health care or medical services.  The Medical Professional Services Exclusion applies to liability from "the rendering of, or the failure to render . . . *professional health care services* including . . . *medical* . . .or nursing services."  Doc. No. 58-3 (Skinner Decl. Ex. A (National Union Policy)) at NU 00338 (emphasis added).  The Professional Liability Exclusion applies to liability from acts "*of a professional nature*."  *Id*. at NU 00340 (emphasis added).  And, the Patient Injury Exclusion applies to liability from injuries sustained by a person "seeking or receiving . . . *medical* . . . care, service or treatment."  *Id*. at NU 00339 (emphasis added).  Ultimately, the applicability of these exclusions depends on the meaning of "professional" or "medical" services.

Courts have defined "professional" or "medical" services most thoroughly when determining coverage under professional liability or medical malpractice policies.  Most courts begin with the analysis set out in *Marx v. Hartford Accident and Indemnity Co.*, 157 N.W.2d 870, 871-72 (Neb. 1968).  In *Marx*, the court explained that, for an act to be professional, "[s]omething more than an act flowing from mere employment or vocation is essential . . . .  A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual."  *Id.*  Further, an act is not a professional service merely because it is performed by a professional.  *Id*. at 872.  To determine "whether a particular act is of a professional nature or a 'professional service,' [courts] must look not to the title or character of the party performing the act, but to the act itself."  *Id.*

Applying this rule, the clear majority of courts, including Oregon courts, have concluded that "sexual conduct [by a medical professional or employee] is not a professional act or service for which medical malpractice insurance coverage is provided."  *R.W. v. Schrein*, 652 N.W.2d

574, 581 (Neb. 2002); 3 Allan D. Windt *Insurance Claims and Disputes* § 11:16 (5th ed. 2007)

("Sexual abuse is not encompassed by the exclusion."). These courts have rejected attempts by

insurers to label sexual assaults as medical or professional services because that understanding is

both inconsistent with the reasonable expectations of the contracting parties and erodes the

concept of legal causation. *Schrein*, 652 N.W.2d at 583 ("It is simply unreasonable to conclude

that conduct such as sexual molestation of a patient . . . is part of a professional medical

procedure.") (quotation omitted); *see also St. Paul Fire & Marine Ins. Co. v. Alderman*, 455

S.E.2d 852, 853-54 (Ga. Ct. App. 1995) (physician's alleged acts of probing patient's vagina and

removing her bra "do not constitute [] medical treatment"); *St. Paul Ins. Co. of Illinois v.

Cromeans*, 771 F. Supp. 349, 353 (N.D. Ala. 1991) (Acts of sexual abuse "are acts that can be

accomplished by laypersons untrained in the medical arts . . . . The fact that the acts occurred

between a doctor and a patient . . . is pertinent *only if the act itself is of a professional nature*.").

  In *Schrein*, for example, the court held that a doctor's alleged sexual abuse of minor

patients was not "medical treatment" or "professional services" even though it occurred during

medical examination, including a pelvic examination. *Schrein*, 652 N.W.2d at 584. The court

reasoned that the plaintiffs "did not establish any harm attributable to any failure to properly

diagnose or treat a medical condition. Rather, their injuries and damages resulted solely from the

affirmative acts of abuse and molestation committed . . . under the guise of medical examination

and treatment." *Id.* The court rejected the attempt "to connect the plaintiffs' damages to

professional services" as resting on the erroneous "assertion that it is impossible to separate

legitimate medical treatment from sexual assault." *Id.*

  The court in *Hirst v. St. Paul Fire & Marine Insurance Co.*, 683 P.2d 440, 444 (Idaho Ct.

App. 1984), reached a similar result by "looking to the *act* rather than the character of the

actor . . . in determining liability for alleged professional services."  In "[l]ooking to the act which harmed [the underlying plaintiff] and of which he really complains," the court was "unpersuaded that the intentional sexual assault constituted 'professional services' under the provisions of the insurance contract."  *Id.*

Oregon courts have likewise recognized the clear distinction between impermissible sexual assault and permissible medical treatment.  *See, e.g.*, *American Cas. Co. v. Corum*, 910 P.2d 1151 (Or. Ct. App. 1996).  In *Corum*, the Oregon Court of Appeals recognized that a factual question may exist whether a registered nurse's conduct in inserting his fingers into the plaintiff's vagina was sexual abuse or a permissible exam, but agreed with the insured that "criminal sexual abuse is not the rendering of professional services."  *Id.* at 1154; *see also Multnomah County v. Oregon Auto. Ins. Co.*, 470 P.2d 147, 150 (Or. 1970) (applying *Marx*). And, in *Hedmann v. Liberty Mutual Fire Insurance Co*., 974 P.2d 755, 757 & nn.2-3 (Or. Ct. App. 1999), the Oregon Court of Appeals expressed agreement with the *Hirst* decision, calling it a "well-reasoned case[]," and concluded, by focusing "on the nature and character of the act, which in many instances necessarily includes the insured's reason for acting," that the prescribing of medication to obtain sex does not fall within a professional services exclusion.

National Union cannot sustain its burden to prove that the Professional Services Exclusions in the National Union Policy apply here because the alleged sexual misconduct by Mr. Haszard was in no way connected with or necessary to the provision of ambulance services to the plaintiffs in the underlying cases.  *See* Mederos Decl., Ex. 28 (Rosteck Decl.) at ¶¶ 6-15. There is no protocol, practice, or guideline authorizing a paramedic to engage in sexual assault. *Id.*; *see also* Lauer Decl. ¶ 11.  Mr. Haszard agreed.  Mederos Decl. ¶ 13; *Id.* at Ex. 19 (Haszard Dep. Tr.) at 271: 19-24, 272: 12-19.  Ms. Herring and Ms. Hines, for example, allege that the

inappropriate touching by Mr. Haszard – the cause of their bodily injury – was "unwanted and unlawful" and was performed without consent or lawful justification.  *See* Mederos Decl., Ex. 14 (*Herring* Sixth Am. Compl.) at ¶ 5; *Id.* at Ex. 16 (*Hines* Compl.) at ¶ 15.  The plaintiffs were not harmed as "patients" through the provision of or failure to provide medical or professional services.

### 2. Additional Exceptions And Ambiguities In The Patient Injury Exclusion Preclude Its Application Here.

Additional issues preclude application of the Patient Injury Exclusion here.  The Patient Injury Exclusion incorporates an exception for bodily injury resulting from certain causes, including "malicious mischief":  "This exclusion, however, does not apply to Bodily Injury sustained by a Patient if such Bodily Injury arises out of . . . malicious mischief . . . ."  Doc. No. 58-3 (Skinner Decl. Ex. A (National Union Policy)) at NU 00339.  The term "malicious mischief" is not defined in the National Union Policy.  Turning to the dictionary, as prescribed by Oregon precedent, *e.g.*, *Gold v. Casserly Landscape, Inc.*, 801 P.2d 844, 846 (Or. Ct. App. 1990), the term "malicious" means "[r]esulting from, inclined to, or marked by malice," and "malice," in turn, is described as "[i]ntent, without just cause or reason, to commit an unlawful act injurious to another or others."  Webster's II *New College Dictionary* 662 (1995).  "Mischief" is defined as "[b]ehavior causing discomfiture or annoyance in another."  *Id.* at 700.

Mr. Haszard's actions, alleged to be intentional behavior by Mr. Haszard that caused discomfiture to the underlying plaintiffs, thus qualify as "malicious mischief" under the plain meaning of the undefined policy term.  As such, the actions taken by Mr. Haszard fall into the exception to the Patient Injury Exclusion, and the exclusion "does not apply to" the claimed underlying injuries.  Doc. No. 58-3 (Skinner Decl. Ex. A (National Union Policy)) at NU 00399.  At the very least, the phrase "malicious mischief" is "sufficiently ambiguous to preclude

judgment as a matter of law in [National Union's] favor." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props.*, 467 F.3d 107, 139 (2d Cir. 2006) (denying judgment as a matter of law to insurer based on clause containing phrase "malicious mischief").

Similarly, an issue of fact remains outstanding as to whether, at the time the underlying plaintiffs were allegedly assaulted by Mr. Haszard, they fit the policy's definition of "patient" as required to invoke the Patient Injury Exclusion – a "person seeking or receiving . . . medical . . . care . . . service or treatment."  Doc. No. 58-3 (Skinner Decl. Ex. A (National Union Policy)) at NU 00339.  Here, National Union provides no record citations substantiating its claims of "medical care."  Instead, National Union appears to rely solely on the allegations of the underlying complaints.  *See* Doc. No. 57 (Summ. J. Mem.) at 26-27.  Even cursory review of the underlying complaints, however, demonstrates that they are general and inconclusive on the issue, and do not describe what, if any, claimed "medical care" the underlying plaintiffs received. This is likely due to the form nature of the complaints, filed by the same plaintiffs' firm, using nearly identical allegations for each plaintiff.  *See, e.g.*, Mederos Decl., Ex. 15 (*Webb* Compl.) at ¶ 4 (describing Haszard's acts as "authorized ambulance services" performed "under the guise of an appropriate examination"); Mederos Decl., Ex. 18 (*Corning* Compl.) at ¶ 4 (same); *Id.* at Ex. 17 (*Lucas* Sec. Am. Compl.) at ¶ 4 (same); *Id.* at Ex. 14 (*Herring* Sixth Am. Compl.) at ¶ 4 (same).

But, individuals transported and attended by paramedics do not necessarily, by virtue of that fact alone, receive "medical care," as that undefined term is used in the National Union Policy.  Lauer Decl. ¶ 12.  Some individuals receive transport only.  *Id.*  Others receive routine or diagnostic examinations that do not rise to the level of professional "medical care."  *Id.*

Under similar circumstances, courts – including the Ninth Circuit – have held that what constitutes "medical care," even when involving doctors acting in professional roles for individuals, involves issues of fact or an ambiguity that must be resolved in favor of coverage. *See, e.g.*, *Franceschi v. Am. Motorists Ins. Co.*, 852 F.2d 1217, 1219-20 (9th Cir. 1988) (colonoscopy and biopsies are not "medical treatment"); *Beggs v. Pac. Mut. Life Ins. Co.*, 318 S.E.2d 836, 837-38 (Ga. Ct. App. 1984) (fifteen minute evaluation not "medical services"); *Mut. Life Ins. Co. v. Bishop*, 209 S.E.2d 223, 225 (Ga. Ct. App. 1974) (preoperative visits "for diagnostic and evaluation purposes only" not medical treatment); *Ind. Comprehensive Health Ins. Ass'n v. Dye*, 531 N.E.2d 505, 508 (Ind. Ct. App. 1988) (issue of fact as to whether doctor's prescription and examination for angina constituted medical treatment); *Head v. Central Reserve Life of N. Am. Ins. Co*., 845 P.2d 735, 742-43 (Mont. 1993) (jury trial necessary to determine if individual had received "medical care" from her doctors).  National Union has failed to present evidence establishing the applicability of the Patient Injury Exclusion.  *Stanford v. Am. Guar. Life Ins. Co.*, 571 P.2d 909, 911 (Or. 1977) ("The insurer has the burden of proof that the loss is excluded.").

### 3.    There Is No Authority For Applying The Professional Services Exclusions To The Haszard Litigation.

That the Professional Services Exclusions, including the Patient Injury Exclusion, do not apply here is apparent from National Union's failure to cite a single case or other authority applying the exclusions.  The reality is that the Professional Services Exclusions form part of an overall program of insurance coverage for AMR and AMR Northwest that is intended to be seamless and avoid coverage gaps.  Thackery Decl. ¶¶ 16-19.  The three Professional Services Exclusions are collectively designed to direct malpractice claims to AMR's professional liability insurer.  *See* 7af-190f *Appleman on Insurance* § 4505.  National Union agrees that this "series of

exclusions confirm[s] this intent of the parties" that "[t]he National Union Policy is not intended to provide professional malpractice coverage." Doc. No. 57 (Summ. J. Mem.) at 31. Where insurance is not available under AMR's professional malpractice coverage – including, for example, instances of sexual assault by an employee – the clear intent of the overall corporate insurance program is for coverage to fall into, and not be excluded from, the general liability polices, including the National Union Policy. *See* Thackery Decl. ¶¶ 16-19.

National Union fails to carry its burden of proof that the Professional Services Exclusions apply as a matter of law. *Stanford*, 571 P.2d at 911. If anything, the Professional Services Exclusions are ambiguous as applied to the underlying litigation involving the alleged sexual assaults by Mr. Haszard, and the exclusions should be narrowly construed against National Union, precluding summary judgment. *Id*.; *United Pac. Ins. Co. v. Truck Ins. Exch.*, 541 P.2d 448, 454 (Or. 1975); *Schutt v. Farmers Ins. Group*, 879 P.2d 1303, 1307 (Or. Ct. App. 1994).

### C.    OREGON LAW APPLIES TO THIS INSURANCE COVERAGE DISPUTE.

#### 1.    National Union Concedes That Oregon Law Applies To All Issues Other Than The Definition Of Occurrence.

The threshold question in any choice of law analysis is whether the laws of two states actually conflict on a material issue. *Spirit Partners v. Stoel Rives*, 157 P.3d 1194, 1198 (Or. Ct. App. 2007). Oregon law applies to all issues unless and until the proponent of another state's law proves a material conflict. *Angelini v. Delaney*, 966 P.2d 223, 300-01 (Or. Ct. App. 1998). National Union thus correctly concedes that it, as the proponent of other law, bears the burden of "identify[ing] material differences between the applicable law of Oregon and of the other forum." Doc. No. 57 (Summ. J. Mem.) at 8 (citing *Waller v. Auto-Owners Ins. Co.*, 26 P.3d 845 (Or. Ct. App. 2001)). The Court has no "obligation to cast around in the law of [the other forum]

in quest of possible material differences." *Angelini*, 966 P.2d at 300; *Home Poker Unltd., Inc. v. Cooper*, No. 09-CV-460, 2009 WL 5066653, at *4 (D. Or. Dec. 15, 2009).

National Union identifies a lone purported difference between the laws of Oregon and Colorado.  Doc. No. 57 (Summ. J. Mem.) at 8 ("With respect to claims involving negligent hiring, management and supervision, Oregon and Colorado courts are in conflict over whether there is a covered 'occurrence.'").  National Union, accordingly, concedes that Oregon law should apply to all issues other than the existence of a covered occurrence with respect to negligent supervision claims.  *Id.*; *see also Waller*, 26 P.3d at 848; *Angelini*, 966 P.2d at 300; *see also Kraft v. Arden*, No. 07-487, 2008 WL 4866182, at *5 (D. Or. Nov. 7, 2008) (where no conflict identified on an issue, Oregon law applies).  National Union's citation of Colorado law on other issues is improper and should be disregarded by the Court.  *See* Doc. No. 57 (Summ. J. Mem.) at 15, 28-29 (citing Colorado law on "interpreting insurance contracts").

### 2.    There Is No "Actual Conflict" Between Oregon And Colorado Law Regarding The Definition Of Occurrence.

The limited choice of law issue posed here is whether there is an actual conflict requiring this Court to reach beyond Oregon law and apply Colorado law to a singular issue – what constitutes covered occurrences in the context of negligent hiring, management, and supervision claims.  National Union identifies only one Colorado case in support of its conflict argument – *Mountain States Mutual Casualty Co. v. Hauser*, 221 P.3d 56 (Colo. App. 2009).  But, as explained above, *see* discussion *supra* at 12-13, *Hauser* is not applicable here.  The *Hauser* court did not address whether claims for negligent supervision or retention based on an employer's ***negligent*** conduct are covered occurrences.  *Id.* at 58-61.  Nor did the *Hauser* court assess whether claims for an employer's ***negligent*** violation of the Oregon Vulnerable Person Statute are covered occurrences.

On those issues, the laws of Oregon and Colorado do not conflict.  Both Oregon and Colorado recognize that negligent conduct is covered as an "occurrence."  *Cf., e.g.*, *Blackhawk-Cent.*, 214 F.3d at 1193 ("[D]amages arising from negligence may constitute an 'accident' under Colorado law."; refusing to preclude coverage where complaint alleged "both intentional conduct and negligence"); *Republic*, 1989 WL 78162, at **2-3 (insurer obligated to defend where lawsuit "includes allegations of negligence"); *Colard*, 709 P.2d at 13 (claim for negligent construction "was the result of an 'occurrence'"), *with Larson*, 2010 WL 1039790, at *3 (claims of parental negligence "are clearly claims invoking an occurrence for which coverage applies"); *Fulmer*, 2004 WL 2647624, at **4-5 (mixed allegations of negligent and intentional conduct constitute occurrence).

National Union, in fact, concedes that there is no determinative substantive difference between Oregon and Colorado law on the occurrence issue by arguing that "this distinction [between Oregon and Colorado law on occurrences] does not alter the outcome here."  Doc. No. 57 (Summ. J. Mem.) at 21.  National Union goes on to assert, as to the expected or intended nature of the claimed injury, that "[t]he outcome under Oregon law should be no different."  *Id.* at 30.  National Union has failed in its obligation to identify an actual, material conflict of laws, and Oregon law governs.  *Waller*, 26 P.3d at 848; *Angelini*, 966 P.2d at 300.

### 3.  Any "Conflict" Between Oregon And Colorado Law Is A False Conflict Because Colorado Has No Substantial Interest At Stake.

Only if there is an actual, material difference between the laws of two states do Oregon courts then "determine whether both states have substantial interests in having their laws applied."  *Home Poker Unltd., Inc.*, 2009 WL 5066653, at *3.  "Where, in the particular factual context, the interests and policies of one state are involved and those of the other are not (or, if they are, they are involved in only a minor way)," there is a "false conflict," and the law of the

interested state applies. *Erwin v. Thomas*, 506 P.2d 494, 496-97 (Or. 1973); *Dabbs v. Silver Eagle Mfg. Co.*, 779 P.2d 1104, 1105 (Or. Ct. App. 1989).

### a.      National Union's Colorado "Interest" Is Unsupported.

National Union seeks to mask the lack of any substantial Colorado interest by skipping this second step of the Oregon choice of law analysis and jumping to the "most significant relationship" test.  *See* Doc. No. 57 (Summ. J. Mem.) at 9.  In doing so, National Union tersely, without analysis or record citation, claims that Colorado "has a strong interest in the contract issues presented by this dispute because the contracts at issue were entered into in Colorado," and Colorado has a policy of enforcing legal contracts.  *Id.* at 13.  Yet, Oregon has an identical policy of enforcing legal contracts.  *See, e.g.*, *Lilienthal v. Kaufman*, 395 P.2d 543, 549 (Or. 1964) ("Oregon, as well as all other states, has a strong policy favoring the validity and enforceability of contracts.  This policy applies whether the contract is made and to be performed in Oregon or elsewhere.").  National Union's purported Colorado "interest" is a nullity that cannot elevate Colorado over Oregon for choice of law purposes.  *Id.*

Moreover, even if National Union had articulated some Colorado policy or interest regarding contracts, National Union has failed in its burden to produce evidence that the National Union Policy was, in fact, made in Colorado such that Colorado contract interests are at stake. There are no record citations in National Union's brief regarding the place of contracting.  *See* Doc. No. 57 (Summ. J. Mem.) at 10-13.  National Union's statement of facts and attorney declaration are likewise silent on where the insurance contract was entered.  *See* Doc. 59 (Concise Stmt. of Facts) at ¶¶ 15-17; Doc. No. 58 (Skinner Decl.) at ¶ 3.  The most these documents allege is that the National Union Policy was brokered in Colorado and delivered to EMSC in Colorado.  *Id.*  Even those allegations, which do not pinpoint the so-called "place of

contracting," are made without foundation and are not competent evidence capable of supporting summary judgment. *See In re Aquaslide*, 85 B.R. at 548.

The record instead reflects that the National Union Policy was brokered by AON Risk Services in Los Angeles, California and delivered there before any subsequent delivery to EMSC in Colorado. *See* Thackery Decl. ¶ 9; *Id*. at Ex. 13 (AIG Excess Casualty Binder). Renewal and negotiation services were performed by Ward Adams, an employee of AON of California. Thackery Decl. ¶¶ 9-10; *Id.* at Ex. 14 (*Herring* Claims File, NU 00208) (contacting "Ward Adams at AON, 213-630-3301," in California, for insurance program information). Mr. Adams negotiated the renewals from Los Angeles, California with officials in National Union's home office and in Los Angeles, California. Thackery Decl. ¶¶ 9-10. The policy binder was issued to AON of California by AIG officials in Los Angeles and New York. Thackery Decl., Ex. 13 (AIG Excess Casualty Binder). The National Union Policy was apparently issued and signed by National Union officials outside of Colorado. Thackery Decl. ¶ 14. And, the underwriting file for the National Union Policy "is kept in New York." Thackery Decl. ¶ 11; *Id*. at Ex. 15 (*Hines* Claims File, NU 00068-69). Not surprisingly, given the lack of negotiations, underwriting, or other contracting contacts with Colorado, National Union identifies no National Union or AON witnesses from Colorado to testify on its behalf. *See* Ginsberg Decl., Ex. 11 (National Union Rule 26(a)(1) Disclosures).

In addition, National Union's lone case citation regarding the place of contracting suggests that National Union's alleged facts – policy issuance in and delivery to Colorado – are irrelevant, if not made conditions precedent to the validity of the insurance contract, because issuance and delivery are not necessary for an insurance contract to be effective. *See* Doc. No. 57 (Summ. J. Mem.) at 10 (citing *Krause v. Washington Nat'l Ins. Co.*, 468 P.2d 513 (Or.

1970)).  Instead, under *Krause*, as cited by National Union, "a contract of insurance is usually effected when an offer, in the form of an application for insurance by the insured, is accepted by the insurance company."  468 P.2d at 517.  National Union, however, presents no evidence regarding where National Union accepted EMSC's request for coverage, or where the "Authorized Representative" signed the policy, an apparent condition precedent to the policy's validity.  Doc. No. 58-2 (Skinner Decl. Ex. A (National Union Policy)) at NU 00305.  The initial record reflects that National Union actually accepted EMSC's request for coverage in New York, where National Union's "Authorized Representative" appears to be located.  *See id.*; Thackery Decl. ¶ 14; *Id.* at Ex. 13 (AIG Excess Casualty Binder); *Id.* at Ex. 16 (Schedule 13D).  National Union has not proven that Colorado was the place of contracting, and Colorado's claimed interest is without foundation.

### b.    There Is No Colorado "Interest" To Protect Here.

And, even if National Union had competent evidence that Colorado was the place of contracting (which National Union does not), there is still no substantial Colorado interest to protect here.  Since 1964, Oregon has rejected the place of contracting as the determinative factor for a choice of law decision.  *See Lilienthal*, 395 P.2d at 546-49 (applying Oregon law to contract entered in California with a California resident).  The Restatement concurs.  *See* Restatement (Second) Conflict of Laws § 188 cmt. e ("Standing alone, the place of contracting is a relatively insignificant contact.").

Therefore, National Union must identify some other substantial state interest relevant to the facts of this coverage dispute.  But, National Union is not a Colorado corporation.  Doc. No. 58 (Skinner Decl.) at ¶ 2.  Colorado has no interest in extending any insurer-protective case precedent to shield a non-Colorado insurer against coverage obligations stemming from litigation in Oregon.  *See, e.g.*, *Kraft*, 2008 WL 4866182, at *6 (where Florida law "seeks to protect

defendants," but the defendants "are not Florida residents," Florida's interests are "minimal");

*Erwin*, 506 P.2d at 496 (no Washington interest in applying defendant-protective precedent

where "[n]o Washington defendant is going to have to respond for damages").  Because National

Union has identified no substantial interest justifying the application of Colorado law regarding

occurrences here, there is no real choice of law issue.  National Union's entreaty to Colorado law

fails.

> ### 4.    Because It Is The Principal Location Of The Insured Risk, Oregon Has The Most Substantial Interest In And Significant Relationship To The Coverage Issues Presented Here.

Oregon has the sole real and substantial interest in, and the most significant relationship

to, the availability of coverage here.  The Restatement (Second) Conflict of Laws, adopted and

applied by Oregon courts, treats insurance contracts differently from other types of contracts.

*See* Restatement (Second) Conflict of Laws § 193 cmt. a ("The rule of this section applies to . . .

the various kinds of casualty insurance, such as . . . liability insurance. . . ."); *see also Malbco

Holdings, LLC v. Amco Ins. Co.*, No. 08-858, 2008 WL 5205202, at *6 (D. Or. Dec. 11, 2008)

(applying Restatement § 193).  Under Section 193, the Restatement makes the law of "the

principal location of the insured risk during the term of the policy" presumptively applicable.

Restatement (Second) Conflict of Laws § 193.  Where, as here, a liability policy is a "multiple

risk policy" that "insure[s] against risks located in several states," courts should "treat such a

case, at least with respect to most issues, as if it involved [multiple] policies, each insuring an

individual risk" in an individual state.  *Id*. at § 193 cmt. f.

As applied here, Section 193, through comment f, focuses on the principal location of the

specific insured risk at issue – the operations of AMR Northwest in Oregon.  The Restatement's

focus on AMR Northwest's Oregon operations is, in fact, dictated by the terms of the National

Union Policy.  The National Union Policy does not include a uniform choice of law provision,

but instead provides in Condition N that "this insurance applies:  1. as if each Named Insured were the only Named Insured; and 2. separately to each Insured against whom claim is made or Suit is brought."  Doc. No. 58-2 (Skinner Decl. Ex. A (National Union Policy)) at NU 00297.  Thus, just as comment f to Section 193 of the Restatement, the National Union Policy directs the Court to consider and apply the policy as if it involved multiple policies applying "separately to each Insured against whom . . . Suit is brought."  *Id.*

Courts have selected the law of the insured risk under circumstances nearly identical to those at issue here.  In *Diamond International Corp. v. Allstate Insurance Co.*, 712 F.2d 1498, 1499-1502 (1st Cir. 1983), for example, the First Circuit applied comment f of Restatement Section 193 to select New Hampshire law because New Hampshire was the location of the operations of the relevant corporate subsidiary, the underlying injury, and the litigation for which the insured sought coverage.  The First Circuit refused to "resurrect" the *lex loci contractu* rule and found that "the issuance of the policy in New York to [the corporate parent's] headquarters" was not a choice of New York law but rather was nothing "more than an accident of corporate procedure or convenience."  *Id.* at 1502.

Other courts have reached the same result, including courts interpreting National Union policies.  *See, e.g.*, *Daughters of Charity Nat'l Health Sys. v. Am. Int'l Group*, No. 04-CV-754, 2006 WL 897154, at *4 (E.D. Mo. Mar. 30, 2006) ("The basis of this lawsuit concerns whether plaintiffs' actions in its Texas location are covered under the policy.  The Court finds that the principal location of the insured risk in this action is Texas."); *Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co.*, 863 F. Supp. 1237, 1240-41 (D. Nev. 1994) ("Thus, Nevada is the principal place of the insured risk relevant to this suit, [the insured's] Henderson, [Nevada] facility.  [The insured's] claims are centered around the insured Henderson plant.  With respect

to that facility, National Union is subject to . . . any obligations imposed by Nevada common and statutory law."); *National Union Fire Ins. Co. v. Standard Fusee Corp.*, 917 N.E.2d 170, 176-81 (Ind. Ct. App. 2010) (applying law of the location of the insured risk, not the law where policy was signed and issued).[3]

Each of the five underlying lawsuits for which Plaintiffs seek coverage from National Union has been filed in Oregon state court.  Mederos Decl., Exs. 14-18.  The alleged injuries occurred during transport in AMR Northwest ambulances in Oregon.  Lauer Decl. ¶¶ 16-21.  The lawsuits allege violations of Oregon statutes and common law arising from actions in Oregon of AMR Northwest's employee, Mr. Haszard.  Mederos Decl., Exs. 14-18.  The underlying plaintiffs are or were all Oregon residents, as are their attorneys and key witnesses.  Mederos Decl. ¶¶ 10-11.

AMR Northwest is an Oregon corporation operating ambulance services out of its headquarter offices in Portland, Oregon.  Mederos Decl. ¶ 4; Lauer Decl. ¶¶ 3-5.  AMR Northwest and its predecessors have operated in Oregon since at least 1968.  Mederos Decl. ¶ 4; *Id*. at Ex. 1 (Certificate of Incorporation).  AMR Northwest leases property in Oregon and registers ambulances there.  Lauer Decl. ¶¶ 3-5.  Through its Oregon operations, AMR Northwest employs more than 650 people.  *Id*. at ¶ 4.  AMR Northwest is the 911 provider in Multnomah, Josephine, and Clackamas Counties and services, *inter alia*, the cities of Portland,

---

[3] *See also Cincinnati Ins. Co. v. Taylor-Morley, Inc.*, 556 F. Supp. 2d 908, 912 (S.D. Ill. 2008) (applying Illinois law, despite issuance of policies to Missouri corporation, because underlying lawsuit was filed by Illinois citizens in Illinois court); *Gates Formed Fibre Prods., Inc. v. Plasti-Vac, Inc.*, 687 F. Supp. 688, 690-91 (D. Me. 1988) ("The mere fact that . . . the insured was domiciled in North Carolina and that the insurance contract was issued in North Carolina, cannot be considered of greater significance than the location of the insured risk, especially where a multiple risk policy is involved.").

Gresham, Troutdale, Fairview, Wood Village, and Maywood Park – more than 1 million Oregon residents. *Id.*

Mr. Haszard maintained his paramedic certification with the State of Oregon. Lauer Decl. ¶ 9. AMR Northwest personnel in Oregon made the decisions regarding hiring, retaining, and investigating Mr. Haszard. Mederos Decl. ¶ 7; *Id.* at Ex. 27 (Sanger Decl.) at ¶¶ 3-4. When Mr. Haszard's employment terminated, the State of Oregon was informed. Lauer Decl. ¶ 22.

Thus, the specific insured risk at issue in this coverage dispute is the operations of AMR Northwest in Oregon. Oregon has a substantial interest in ensuring that insurance coverage is available to satisfy any liabilities to Oregon residents resulting from litigation and judgments in Oregon courts. *See* Restatement (Second) Conflict of Laws § 193 cmt. c ("[T]he state where the insured risk will be principally located during the term of the policy has a natural interest in the determination of issues arising under the insurance contract."). Oregon state and federal courts have incorporated and expressed that interest in their codes of civil procedure. *See* Or. R. Civ. P. 36B(2)(a) (requiring disclosure of "any insurance agreement" available to satisfy judgment); Fed. R. Civ. P. 26(a)(1)(A)(iv). The Restatement, accordingly, presumptively selects the law of Oregon as the principal location of the insured risk.

Under Section 193, comment f of the Restatement and Condition N of the National Union Policy, National Union's focus on EMSC – the Colorado parent of AMR Northwest – is misplaced. EMSC is not a defendant in any of the underlying Oregon lawsuits. *See* Mederos Decl., Exs. 14-18 (Complaints). EMSC is not a party here. Doc. No. 45 (Am. Compl.). EMSC was not involved with the decisions to hire or fire Mr. Haszard. Mederos Decl, Ex. 27 (Sanger Decl.) at ¶¶ 4-5. EMSC is not the "Insured against whom . . . Suit is brought." *See* Doc. No. 58-2 (Skinner Decl. Ex. A (National Union Policy) at NU 00297. Absent fraud, parent and

subsidiary companies must be treated as separate legal entities. *Chase v. Weight*, No. 87-570, 1988 U.S. Dist. LEXIS 11566, at \*6 (D. Or. Oct. 12, 1988) (parent and subsidiary "corporations are separate legal entities and ordinarily are to be regarded as such"); *City of Salem v. HSB*, 733 P.2d 890, 894 (Or. 1987) (Oregon courts are "extremely reluctant to disregard the corporate form unless exceptional circumstances exist.").

    **5. Other Contacts Demonstrate That Oregon Has The Only Substantial Interest In The Coverage Issues Here.**

   Over and above the Restatement Section 193 presumption, other contacts likewise demonstrate that Oregon has the only substantial interest in, and most significant relationship to, the coverage issues here. The choice of law dispute involves interpretation of the term "occurrence" as used in the National Union Policy. *See* Doc. No. 57 (Summ. J. Mem.) at 8-9. The alleged "occurrences" took place in Oregon. National Union concedes as much. *Id.* at 7 ("Plaintiffs are seeking coverage . . . for claims arising out of the criminal misconduct of a former employee in Oregon."). Oregon, as the situs of the disputed "occurrences," has the most natural connection to the interpretation of the term "occurrence." Indeed, to the extent that the existence of an "occurrence" depends on whether the underlying claims for vulnerable person abuse are based on intentional or negligent conduct, the decision will rest on an interpretation of Oregon's Vulnerable Person Statute. *Cf.* Doc. No. 57 (Summ. J. Mem.) at 22 (arguing "knowing[]" and "non-accidental conduct" required to violate statute), *with* Mederos Decl., Ex. 26 (*Herring* JNOV Order) at 4-5 ("A person violates the Vulnerable Person Abuse statute when they negligently fail to prevent another from abusing a vulnerable person."). It would be anomalous to apply Colorado coverage precedent on intent to interpret the intent element required under Oregon's Vulnerable Person Statute.

Oregon is also the location where National Union is being called upon to perform its policy obligations. *See, e.g.*, *Cincinnati Ins. Co.*, 556 F. Supp. 2d at 912 (applying Illinois law despite Missouri corporate headquarters and policy issuance:  "The underlying lawsuit was filed by Illinois citizens in Illinois court.  Illinois is the state in which [the insurer] has been called to perform under the contract.").  Judgments and settlements subject to National Union's coverage are payable in Oregon.  And, upon exhaustion of underlying policy limits, National Union will be called upon to perform its duty to defend in Oregon courts.  *See* Doc. No. 58-3 (Skinner Decl. Ex. A (National Union Policy)) at NU 00314-15.  Oregon has a substantial interest in the legal defense and representation of clients in Oregon courts:  "To hold that the law of the state where the insurance contract happened to be executed is the law that controls the defense of a case, regardless of the forum, would be to totally ignore the interests of the separate states in the conduct of litigation properly within their jurisdiction."  *Gates Formed Fibre Prods., Inc.*, 687 F. Supp. at 690-91.

### 6.   National Union Cannot Legitimately Object To Application Of Oregon Law To Oregon Liabilities.

National Union is no stranger to Oregon.  National Union is a nationwide insurer.  It is registered to conduct business in Oregon and does so.  Ginsberg Decl. ¶ 5; *Id.* at Ex. 1 (Oregon Ins. Division Webpage).  And, when it signed the policy at issue here, National Union knew that it was contracting with a nationwide business with a covered corporate subsidiary operating in Oregon.  *See, e.g.*, Doc. No. 57 (Summ. J. Mem.) at 10  (National Union Policy covers "EMS's operations nationwide").

In light of this nationwide presence, National Union cannot legitimately object that some singular application of Colorado law should apply to all liabilities insured by the National Union Policy, no matter where they arise.  *See id.* at 13-14.  Had National Union desired uniform policy

interpretation under Colorado law, National Union could have incorporated a choice of law

provision into its policy.  Other courts have so warned National Union:

> If the parties to an insurance contract truly prize uniform
> interpretation of multistate insurance policy language, they can
> frequently achieve it by expressing a choice of law in the contract.
> Their failure to express such a choice tends to show that uniform
> interpretation was not a conscious goal of the contracting parties.

*Nat'l Union*, 917 N.E.2d at 179 (internal citation and quotations omitted)

The Colorado Amendatory Endorsement for Cancellation/Nonrenewal is not a choice of

law provision, nor should it be interpreted as such.  *See P.W. Stephens Contractors, Inc. v. Mid-*

*Am. Indem. Ins. Co.*, 805 F. Supp. 854, 856-57 (D. Haw. 1992) (applying Hawai'i law, despite

"standard language that tells a policy buyer of his or her rights under Texas laws"); *Beltway*

*Mgmt. Corp. v. Lexington-Landmark Ins. Co.*, 746 F. Supp. 1145, 1148 (D.D.C. 1990) (New

York amendatory endorsements do not "designate which state's law should apply").  There is no

cancellation or nonrenewal issue here.  Other provisions of the National Union Policy identify

other states, including Vermont, Florida, West Virginia, and Louisiana, *see* Doc. No. 58-3

(Skinner Decl. Ex. A (National Union Policy)) at NU 00346, and the underlying policies

identified in National Union's Schedule of Underlying Insurance incorporate amendatory

endorsements for many states, including Oregon.  *See id*. at NU 00276-77; Thackery Decl. ¶ 15;

*Id*. at Exs. 17-18.  But National Union does not assert that the policy selects the law of those

forums.  The absence of any express choice of law provision can and should be construed against

National Union, as the insurer and drafter of the policy, in favor of Oregon law here.  *See, e.g.*,

*Nat'l Union*, 917 N.E.2d at 180-81.

National Union's cited precedent does not dictate any other result.  *See* Doc. No. 57

(Summ. J. Mem.) at 11-12.  The decision in *Davis v. State Farm Mutual*, 507 P.2d 9, 10 (Or.

1973), for example, involves a single-risk policy insuring residents of one state.  National

Union's other cited cases address tort claims or contracts other than insurance contracts.  *See*

Doc. No. 57 (Summ. J. Mem.) at 7-9 (citing, *e.g.*, *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643

(9th Cir. 1988) (personal services contract); *Stricklin v. Soued*, 936 P.2d 398 (Or. Ct. App. 1997)

(promissory note); *Frost v. Lotspeich*, 30 P.3d 1185 (Or. Ct. App. 2001) (attorney fee agreement);

*Portland Trailer & Equip., Inc.  v. A-1 Freeman Moving & Storage, Inc.*, 49 P.3d 803 (Or. Ct.

App. 2002) (tort claim)).  National Union cites no authority assessing in the multiple risk context

at issue here.

      **D.**     **OUTSTANDING DISCOVERY MANDATES DENIAL OF NATIONAL UNION'S SUMMARY JUDGMENT MOTION.**

      Rule 56(f) of the Federal Rules of Civil Procedure precludes summary judgment when a

litigant has not had the opportunity to discover information essential to its opposition.

*Burlington N. Santa Fe R.R. Co. v. Assiniboine and Sioux Tribes*, 323 F.3d 767, 773 (9th Cir.

2003); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001).  A Rule 56(f) request

should be granted "almost as a matter of course" to a party diligently pursuing discovery.

*Burlington N.*, 323 F.3d at 773-74 (quoting *Wichita Falls Office Assoc. v. Banc One Corp.*, 978

F.2d 915, 919 n.4 (5th Cir. 1992)).  Where information is "the subject of outstanding discovery

requests" or motion practice, summary judgment "is especially inappropriate."  *Visa Int'l Serv.*

*Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986); *see also Garrett v. City*

*& County of San Francisco*, 818 F.2d 1515, 1518-19 (9th Cir. 1987) (error to grant summary

judgment in light of pending discovery motion).

      Here, as stated in Plaintiffs' separately filed Rule 56(f) motion, there are multiple

outstanding discovery issues that preclude summary judgment for National Union.  Plaintiffs

served interrogatories and document requests on National Union on March 4, 2010.  Ginsberg

Decl. ¶ 8.  National Union served responses on April 22, 2010 – just three days before National

Union filed its summary judgment motion.  *Id.* at ¶ 9.  National Union, however, refused to provide complete responses to four interrogatories and five document requests, and National Union simultaneously filed a motion for protective order that remains pending.  *See* Doc. No. 55-2.  National Union responded to other discovery requests with unresponsive answers and, in some cases, declined to respond because "[d]iscovery only began in this case."  Ginsberg Decl. ¶ 11; *Id.* at Ex. 7 (National Union's Resp. to Interrog.) at Nos. 8-9.

Deposition discovery also remains outstanding.  On April 27, 2010, Plaintiffs served a deposition notice on National Union pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Ginsberg Decl. ¶ 21; *Id.* at Ex. 13 (Rule 30(b)(6) Deposition Notice to National Union).  The notice, like Plaintiffs' other discovery requests, seeks information about the negotiating, underwriting, and placement of the National Union Policy, as well as the terms and conditions of the Policy and claims handling.  *Id.* at Nos. 1-2.  National Union has yet to provide responsive testimony, and just yesterday, on June 2, 2010 – over a month after service of the Rule 30(b)(6) notice – National Union first informed Plaintiffs that it will not produce any witnesses in response to Plaintiffs' deposition notice.  Ginsberg Decl. ¶ 22; *see also* Doc. No. 68.

The information that National Union has refused to provide is critical to responding to National Union's summary judgment motion.  Ginsberg Decl. ¶¶ 15-28.  National Union, for example, rests its choice of law argument on the view that the parties entered and negotiated the National Union Policy in Colorado.  *See* Doc. No. 57 (Summ. J. Mem.) at 12 ("[T]he parties negotiated and entered into the National Union Policy in Colorado.").  Plaintiffs believe the preliminary record shows that the parties negotiated and entered the National Union Policy outside of Colorado.  *See* discussion *supra* at 23-25.  If the Court is not convinced by the existing contracting evidence or other Oregon policy arguments presented by Plaintiffs, then it is critical

that Plaintiffs be provided responses to Plaintiffs' served discovery regarding the underwriting, negotiating, and drafting history of the National Union Policy before the Court makes a choice of law ruling contingent on the "place of contracting" or "place of negotiations" being Colorado. *See* Ginsberg Decl. ¶¶ 15-28.

The National Union Policy was negotiated between National Union and Plaintiffs' former (not current) third-party insurance broker, AON, and Plaintiffs do not otherwise have information on National Union's underwriting, negotiating, and drafting. Thackery Decl. ¶¶ 4, 12-13. For example, Plaintiffs do not know where National Union officials were physically located at the time of signing. Doc. No. 58-2 (Skinner Decl. Ex. A (National Union Policy)) at NU 00305. Nor do Plaintiffs know where the National Union "Authorized Representative" signed the policy. Thackery Decl. ¶ 13. Plaintiffs have properly requested and need the underwriting, negotiating, and drafting information from National Union to respond to National Union's choice of law argument. Ginsberg Decl. ¶¶ 15-28.

## IV.    <u>CONCLUSION</u>

For all of these reasons, National Union's motion for summary judgment should be denied. Neither the definition of "occurrence" nor the "expected or intended injury" exclusion precludes coverage. The "professional services" exclusions do not apply. Oregon, not Colorado, law applies to the National Union Policy. And, outstanding discovery mandates denial of National Union's motion.

Date:  June 3, 2010

Respectfully submitted,


By  /s/  Paul J. Jalsevac

    Michael H. Ginsberg  (*pro hac vice*)
    Paul J. Jalsevac (*pro hac vice*)
    JONES DAY
    500 Grant Street, Suite 4500
    Pittsburgh, PA  15219
    Telephone:  (412) 391-3939
    Facsimile:  (412) 394-7959

    Michael E. Farnell, OSB #922996
    E-Mail:  mfarnell@pfglaw.com
    PARSONS FARNELL & GREIN, LLP
    1030 SW Morrison Street
    Portland, OR  97205
    Telephone:  (503) 222-1812
    Facsimile:  (503) 274-7979

    ***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 3, 2010, I electronically filed the foregoing document with

the Clerk of the Court using the CM/ECF system and the document is available for viewing and

downloading from the CM/ECF system.  I also certify that the foregoing document is being

served electronically via the Court's CM/ECF notice system upon the following counsel of

record:

> William F. Knowles, Esq.
> Robert A. Meyers
> Thomas M. Jones
> COZEN O'CONNOR
> 1201 Third Avenue, Suite 5200
> Seattle, WA  98101
>
> ***Attorneys for Defendant ACE American Ins. Co.***
>
> Stephen G. Skinner, Esq.
> Jenny M. Churas, Esq.
> Johnson, Andrews & Skinner
> 200 W. Thomas Street, Suite 500
> Seattle, WA  98119
>
> Lee S. Aronson
> Schulte Anderson Downes Aronson Bittner, PC
> 811 SW Naito Parkway, Suite 500
> Portland, OR  97204-3379
>
> ***Attorneys for Defendant National Union Fire Insurance***
> ***Company of Pittsburgh, PA***

> */s/ Paul J. Jalsevac*
> Attorney for Plaintiffs

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NATIONAL UNION'S MOTION FOR
SUMMARY JUDGMENT