FILED21 OCT '11 14:26USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| AMERICAN MEDICAL RESPONSE NORTHWEST, INC.; ET AL., | ) | No. 3:09-cv-01196-JO |
| Plaintiffs. | ) | |
| v. | ) | OPINION AND ORDER |
| ACE AMERICAN INSURANCE COMPANY; ET AL., | ) | |
| Defendants. | ) | |

Michael E. Farnell
James Lee Guse
PARSONS FARNELL & GREIN, LLP
1030 S.W. Morrison
Portland, OR 97205

Michael H. Ginsberg
Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219

Attorneys for Plaintiffs

Robert A. Meyers
Thomas M. Jones
William F. Knowles
COZEN O'CONNOR
1201 Third Avenue, Suite 5200
Seattle, WA 98101

Jenny M. Churas
JOHNSON ANDREWS & SKINNER PS
200 W. Thomas Street, Suite 500
Seattle, WA 98119

Lee S. Aronson
SCHULTE ANDERSON DOWNES ARONSON & BITTNER, PC
811 S.W. Naito Parkway, Suite 500
Portland, OR 97204-3379

Stephen G. Skinner
ANDREWS SKINNER PS
645 Elliott Avenue West, Suite 350
Seattle, WA 98119-3911

   Attorneys for Defendants

JONES, Judge:

Plaintiff ambulance service providers, American Medical Response Northwest ("AMR Northwest") and American Medical Response, Inc. ("AMR"), bring this action against two insurers, defendants ACE American Insurance Company ("ACE") and National Union Fire Insurance Company ("National Union"), alleging claims for declaratory relief and breach of insurance contract.

The litigation arises out of defendants' refusal to admit coverage in connection with fourteen underlying state court actions against plaintiffs, all involving allegations that an employee of AMR Northwest, Lannie Haszard, inappropriately touched or sexually abused female ambulance passengers during ambulance transport. Five of the actions have settled; one

proceeded to trial, yielding a hefty verdict,[1] and presently is on appeal; the rest[2] remain pending in Multnomah County Circuit Court.

Each defendant provided excess commercial umbrella liability policies to plaintiffs: ACE during two periods, from February 10, 2005, to February 10, 2006, and from February 10, 2006, to March 31, 2007; and National Union during the period from March 31, 2007, to March 31, 2008. Each policy provided $25 million in excess coverage per occurrence for liability incurred as a result of bodily injury that is in excess to the primary commercial general liability. In 2005-2006, the primary insurance limit was $2 million per occurrence in excess of a $250,000 self-insured retention; in 2006-2007 and 2007-2008, the primary insurance limit was $1,750,000 per occurrence, subject to the same $250,000 self-insured retention.

Plaintiffs allege that settlements or judgments in the fourteen state court actions will exhaust their primary commercial general liability coverage. Plaintiffs seek a declaration of coverage under all three policies, allege claims for breach of contract against both defendants, and seek recovery of attorney fees.

The case is now before the court on National Union's motion (# 56) for summary judgment, ACE's motion (#110) for summary judgment, and ACE's motion (# 132) for summary judgment on the Akre claim. For the reasons stated below, all three motions are granted in full.

---

[1] $1.5 million against AMR Northwest; $1.75 million against both AMR Northwest and American Medical Response, Inc.

[2] It appears that one of the actions, Whalen v. American Medical Response Northwest, Inc., et al., Multnomah County Circuit Court Case No. 0911-16290, was dismissed on summary judgment, and also is on appeal. Second Declaration of Michael Ginsberg in Opposition to ACE's Motions for Summary Judgment, Exh. 2 (Order Re: Defendants' Motion for Summary Judgment Against Plaintiff Whalen, Dec. 8, 2010).

STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim determines whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. T.W. Elec. Service, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. Id. at 630-31.

DISCUSSION

At issue in the present motions is whether the intentional criminal sexual abuse and/or attempted sexual abuse by plaintiffs' employee[3] may properly be characterized as an "accident" and, therefore, an "occurrence" giving rise to coverage under the ACE and National Union insurance policies. The policies at issue do not contain choice of law provisions: Defendants contend that Colorado law applies to the coverage issue; plaintiffs contend that Oregon law

---

[3] Lannie Haszard presently is incarcerated on two overlapping prison sentences in connection with the same sexual abuse charges alleged in the underlying civil actions in this case. See Helen Jung, *Ex-paramedic receives plea deal*, The Oregonian, August 24, 2011, at C2.

applies. Thus, resolution of the present motions first requires a determination as to whether Colorado and Oregon law differ materially on this question, and if so, which state's law applies.

I. The Insurance Policies.

As stated, the ACE policies covered plaintiffs during two contract years, 2005-2006 and 2006-2007. As relevant to the present motions, both policies contain, in endorsements, the following language:

> A. COVERAGE . . .
>
> 1. We will pay on behalf of the INSURED those sums in excess of the INSURED'S RETAINED LIMIT that the INSURED becomes legally obligated to pay as damages because of BODILY INJURY . . . to which this insurance applies.
>
> A. This insurance applies to BODILY INJURY . . . that takes place in the COVERAGE TERRITORY, but only if:
>
> 1. The BODILY INJURY . . . is caused by an OCCURRENCE . . . .

Declaration of Kevin Butler in Support of Ace American Insurance Company's Motion for Summary Judgment ("Butler Decl."), Exhibit ("Exh.") A, p. 32; Exh. B, p. 20. Both policies define "occurrence" as "an accident including continuous or repeated exposure to substantially the same harmful conditions." Butler Decl., Exh. A, p. 15; Exh. B, p. 11. Further, both policies exclude coverage for bodily injury that is "expected or intended from the standpoint of the INSURED. . . ." Butler Decl., Exh. A, p. 11, Exh. B, p. 7.

The National Union Policy, which provided coverage from 2007-2008, contains language substantially similar to the ACE policies, as follows:

> A. We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as

> damages by reason of liability imposed by law because of **Bodily Injury** . . . to which this insurance applies . . . .
>
> B. This policy applies, only if:
>
> 1. The **Bodily Injury** . . . is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** occurs during the **Policy Period** . . . .

Declaration of Stephen Skinner in Support of National Union Fire Insurance Company's Motion for Summary Judgment ("Skinner Decl."), Exh. A, p. NU 00283. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id., p. NU 00302. Like the ACE policies, the National Union policy excludes bodily injury "expected or intended from the standpoint of the **Insured**." Id., p. NU 289.

II. Choice of Law.

This court, exercising diversity jurisdiction, applies the choice of law rules of Oregon, the state in which this action was filed. Klaxon Co. v. Stentor Elec . Mfg. Co., 313 U.S. 487, 496 (1941); Sims Snowboards, Inc. v. Kelly, 863 F.2d 643, 645 (9th Cir. 1988) (applying Oregon law).

The threshold determination in analyzing a conflict of law issue is "whether there is a material difference between Oregon substantive law and the law of the other forum," in this case, Colorado. Waller v. Auto-Owners Ins. Co., 174 Or. App. 471, 476, 26 P.3d 845 (Or. App. 2001). If there is no material difference, "*i.e.*, if there is a 'false conflict' instead of an 'actual conflict,' - Oregon law applies." Id. (citation omitted).

After extensive and thorough consideration, I conclude that there is a material difference between Oregon and Colorado law on the key issue in this action.

a.   Oregon Law

As defendants more or less concede, to the extent the underlying complaints allege negligent conduct on plaintiffs' part, under Oregon law that conduct can qualify as "accident" from the perspective of the insured and, therefore, can qualify as an "occurrence" within the meaning of the coverage language. See Defendant ACE's Memorandum in Support of Motion for Summary Judgment, pp. 9-13 and p. 10 n.3; see also Defendant National Union's Reply to Plaintiffs' Supplemental Opposition to National Union's Motion for Summary Judgment, p. 6.

In a well-reasoned opinion, Magistrate Judge Stewart analyzed Oregon law in the context of policy provisions substantially similar to the provisions at issue here, and concluded that under Oregon law, "claims of negligence against an employer arising from sexual abuse by an employee . . . fall[s] within coverage for an "occurrence." TIG Ins. Co. v. Travelers Ins. Co., 2003 WL 24051560 at *3 (D.Or. 2003) (citing North Clackamas Sch. Dist. No. 12 v. Oregon Sch. Bds. Ass'n Prop. & Cas. Trust, 164 Or App. 339, 991 P.2d 1089 (Or. App. 1999), and Interstate Fire & Cas. Co. v. Archdiocese of Portland in Oregon, 35 F.3d 1325, 1330 (9th Cir. 1994)). Judge Stewart explained:

> An "occurrence" for purposes of insurance coverage is any injury caused by an accident, which exists unless the insured subjectively intended to cause the injuries in question. Mutual of Enumclaw Ins. Co. v. Gutman, 172 Or.App. 528, 534, 21 P.3d 101, 105, review denied, 333 Or. 162, 39 P.3d 192 (2001). When analyzing coverage for an "insured" employer arising from the intentional acts of an employee, it is not the intent of the intentional actor, which controls whether coverage exists. Albertson's Inc. v. Great Southwest Fire Ins. Co., 83 Or.App. 527, 531, 732 P.2d 916, 918 (1987), review denied, 303 Or. 332, 736 P.2d 566 (1987).
>
> Claims of negligence or vicarious liability against employers for intentional acts by employees constitute an "occurrence" under liability insurance

> policies. Because such allegations are not premised on intentional harm by the employer, such claims fall within the coverage for an "occurrence."

TIG Ins. Co., 2003 WL 24051560 at *3.[4]

b. Colorado Law

Defendants rely on Mountain States Mut. Cas. Co. v. Hauser, 221 P.3d 56 (Colo. App. 2009) for the proposition that under Colorado law, an underlying plaintiff's bodily injury can never qualify as an "occurrence" if the immediate cause of the underlying injury is an intentional act.

In Hauser, a restaurant manager sexually assaulted Hauser, a waitress. Hauser filed an action against the manager and the restaurant, Mulligan's. With respect to Mulligan's, Hauser alleged claims for negligent hiring, negligent supervision, and negligent retention of the manager, and also asserted that Mulligan's was responsible for the manager's acts under theories of respondeat superior and vicarious liability. Hauser, 221 P.3d at 58. Ultimately, Hauser obtained a default judgment against Mulligan's, and after an evidentiary hearing, the trial court awarded her damages in the sum of $873,380.16, which included $50,000 in punitive damages based on a finding that Mulligan's conduct was willful, wanton, and reckless. Id.

The insurer, Mountain States, then filed an action against Mulligan's seeking a declaratory judgment, in essence, that Hauser's suit did not trigger coverage under the applicable

---

[4] "Accident" is not defined by the ACE and National Union policies, but Oregon courts have defined "accident" to mean an "incident or occurrence that happened by chance, without design and contrary to intention and expectation." St. Paul Fire & Marine Ins. Co., Inc. v. McCormick & Baxter Creosoting Co., 324 Or. 184, 205, 923 P.2d 1200 (1996) (internal quotations and citation omitted).

commercial general liability policy.[5] After Mulligan's failed to respond, the court entered a default judgment in Mountain States' favor. The court later granted Hauser's motion to set aside the default and permitted her to intervene as a defendant. Mountain States and Hauser then filed cross-motions for summary judgment. Id., at 58-59. The trial court entered summary judgment for Mountain States, ruling that Mulligan's, and thus Hauser, were not entitled to coverage under the policy. Id., at 59.

On appeal, the Colorado Court of Appeals affirmed. Although defendants insist that the court held that an intentional act of sexual assault can never constitute an "accident" or "occurrence" within the meaning of a comprehensive general liability policy, a fair reading of the opinion compels the conclusion that the actual holding of the case is narrower. Specifically, the court of appeals focused on the finding of the trial court that Mulligan's acted willfully and wantonly, i.e., that "Mulligan's 'knew full well what was potentially going to happen with their son [the manager] and the female employees and did not care.'" 221 P.3d at 61 (quoting the trial court, no citation given). The court continued:

> Thus, Hauser alleged and proved that [the manager's] conduct was foreseeable and not unexpected on Mulligan's part. Under such circumstances, we cannot conclude that the negligent hiring and supervision by Mulligan's was an "occurrence" or "accident" within the meaning of the policy.
>
> Moreover, even if the negligent hiring and supervision were an "occurrence" as defined in the policy, these facts and circumstances demonstrate that Hauser's damages fall within the "expected or intended injury" exclusion of the policy. . . . Though we need not determine whether an injury resulting from

---

5 As relevant, the policy in Hauser contained language identical to the ACE and National Union policies, defining "occurrence" as "'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.'" Colorado courts interpret "accident" in a commercial general liability policy to mean "'an unanticipated or unusual result flowing from a commonplace cause.'" Hauser, 221 P.3d at 59 (citation omitted).

> the foreseeable harm in a negligent hiring or supervision case could ever be found to be "unexpected" under an insurance policy provision in different circumstances, based on the facts and determinations of the trial court as set forth above, the sexual assault in this case cannot be considered unexpected from Mulligan's vantage point.

221 P.3d at 61 (emphasis added).

As the emphasized language shows, the court itself acknowledged the limited nature of its holding. No other Colorado appellate court decision appears to have addressed the specific issue of whether pure negligence on the part of an insured can render bodily injury resulting from intentional criminal conduct by an employee an "accident" or "occurrence" within the meaning of a general commercial liability policy. In the absence of such a decision, this court "'must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'" Vestar Development II, LLC v. General Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001) (quoting Lewis v. Tel. Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996)).

I conclude, based on the extensive discussion in Hauser, that even in the absence of evidence of willful and wanton conduct on the part of the insured, Colorado appellate courts would hold that the intentional act of sexual assault cannot qualify as an "accident" or "occurrence" within the meaning of a general commercial liability policy. This conclusion is derived from the court's own comments and its citation to and discussion of, with approval, cases from other jurisdictions that hold that intentional conduct by a negligently hired or supervised employee does not qualify as an "accident" or "occurrence." Specifically, Hauser cites American Empire Surplus Lines Insurance Co. v. Bay Area Cab Lease, Inc., 756 F. Supp. 1287, 1289-90 (N.D.Cal. 1991) ("Negligent hiring/supervision is not an accident."); Mattress Discounters of

New York, Inc. v. U.S. Fire Ins. Co., 251 A.D.2d 384, 385, 674 N.Y.S.2d 106 (1998) (claim for negligent hiring and negligent supervision does not alter the fact that the "operative act giving rise to any recovery is the assault."); and Farmers Alliance Mutual Insurance Co. v. Salazar, 77 F.3d 1291, 1294 (10th Cir. 1996) ("when determining whether a bodily injury was "caused by an occurrence" the question of whether there was an "occurrence" should be resolved by focusing on the injury and its immediately attendant causative circumstances.").

The Hauser court described the reasoning of Salazar as "persuasive and applicable here," and explained:

> The incident that caused Hauser's injury was the sexual assault, and as she admits, the immediate cause of her bodily injury was [the manager's] intentional conduct.
>
> Hauser cites no case where an intentional act of sexual assault constituted an "accident" or "occurrence" within the meaning of a comprehensive general liability policy. Rather than resort to "head-spinning judicial efforts at definition," we conclude that the common understanding of an "accident" does not include the assault that occurred here. See Senkier v. Hartford Life & Accident Ins. Co., 948 F.2d 1050, 1053 (7th Cir. 1991) ("A person can tell time without being able to define 'time' and he [or she] can know how to ride a bicycle or shoot pool without being able to explain the principles of physics that enable him [or her] to do these things."). In short, though there are various ways to describe what happened to Hauser, it was not an "accident."

Hauser, 221 P.3d at 60-61. The court further rejected Hauser's reliance on Colorado cases holding that insurer may not limit coverage against intentional acts in automobile insurance policies as "inapposite." 221 P.3d at 61-62.

Based on the above, I conclude that the highest Colorado appellate court, addressing the specific coverage issue in this case, would hold that intentional sexual assault by a negligently hired or negligently supervised employee does not constitute an "accident" or "occurrence" within the meaning of the ACE or National Union policies.

c. Conflict of Laws Analysis

Having determined that an actual conflict of substantive law exists between Oregon and Colorado, I must next determine which state has the most significant contacts with this dispute. This action is a contract action, centering on the interpretation of terms of insurance policies. In deciding choice of law issues in contract cases, Oregon courts find guidance in section 188 of the Restatement (Second) of Conflict of Laws. Manz v. Continental American Life Ins. Co., 117 Or. App. 78, 82, 843 P.2d 480 (1992) ("[a]lthough *Restatement (Second) of Conflict of Laws* is not the law of Oregon, our courts refer to its provisions as a guide in resolving conflict of laws questions, especially in contract cases."). Section 1988 of the Restatement provides, in part:

> (2) In the absence of an effective choice of law by the parties . . . the contacts to be taken into account . . . to determine the law applicable to an issue include:
>
> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract,
>
> (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied . . . .

Restatement (Second) Conflict of Laws § 1988 (1971); Manz, 117 Or. App. at 82.

The evidentiary record in this case, as derived from the parties' various statements of material facts and supporting documents, reveals the following. Emergency Medical Services

Corporation ("EMSC"), is the named insured in the National Union policy and is the parent corporation to plaintiffs AMR and AMR Northwest. The named insured in the ACE policies is AMR. EMSC is a Delaware corporation headquartered in Greenwood Village, Colorado. Plaintiff AMR, also a Delaware corporation, conducts business in 40 states[6] and likewise is headquartered in Greenwood Village, Colorado. Plaintiff AMR Northwest is an Oregon corporation with its headquarters in Oregon. AMR Northwest's authorized representative in 2007 was located in Colorado, and AMR Northwest's mailing address was a Greenwood Village, Colorado, address.

National Union is a Pennsylvania corporation with its principal place of business in New York City, New York. ACE is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

At the relevant time, Ronald Thackery was the risk manager for AMR and worked out of the Greenwood, Colorado, offices. Declaration of William Knowles in Support of ACE's Reply Memorandum, Exhibit B (Deposition of Ronald Thackery ("Thackery Depo."), p. 4-5.[7] Thackery and others in the Colorado offices worked through a broker, AON Risk Services ("AON"), to acquire the policies at issue. AON has offices in Colorado and California, and Thackery worked with representatives of both offices. Thackery Depo., p. 10. Thackery never traveled out of Colorado for purposes of acquiring the excess liability umbrella policies. See Thackery Depo., p. 13.

---

[6] The parties dispute the exact number of states in which AMR did business at the relevant time, but the dispute is not material to this disposition.

[7] The court acknowledges that this deposition was filed under seal. The testimony relevant to this disposition, however, does not appear to require confidential treatment.

Kevin Butler, Vice President of ACE USA, Excess Casualty Division, underwrote the AMR account with assistance from ACE employees in New York. Butler Decl., p. 2, ¶ 5. Butler underwrote the risk based on AMR being a Colorado company with related companies. Id., p. 2, ¶ 8. In underwriting the risk, Butler dealt primarily with AON Colorado and AON California, but understood that AON Colorado had final decision-making authority with regard to the ACE policies. Id., p. 3, ¶¶ 10-11. Similarly, the National Union policy was brokered by AON in Colorado and California. Skinner Decl., p. 2, ¶ 3, and Exh. A, p. NU 274.

Although the parties dispute the details of the actual initial delivery of the policies - to AON in California or Colorado - ultimately all three policies were delivered to the named insureds in Colorado.

Oregon's only relationship to this dispute is that the underlying litigation involves Oregon claims against the Oregon entity, AMR Northwest. The third-party administrator for claims against the insureds, including the specific claims pending in Multnomah County, Oregon, is Sedgewick Claims Management Services, which is located in Denver, Colorado. Thackery Depo., pp. 16-17. At some point in 2010, another Sedgwick adjuster, working out of California, started working on the AMR account. Thackery Depo., p. 17-18. According to Thackery, Sedgwick's role with respect to the Oregon claims is to "investigate the claim. They administer the claim. They make payments. They provide notice to carriers, they interact with carriers, they facilitate payment, work with attorneys." Thackery Depo., p. 18.

Plaintiffs contend that significant activity related to the policies occurred in California, see, e.g., Plaintiffs' Response to ACE's Statement of Fact, but the bottom line is this: No one contends that California law applies to this dispute. The record overwhelming supports

defendants' contention that the insurance policies at issue were negotiated from Colorado, entered into in Colorado under the auspices of Colorado law,[8] were issued to Colorado residents, and are performed in Colorado. That the underlying injuries occurred in Oregon is fortuitous only, and is not controlling. See Mid-Century Ins. Company v. Perkins, 209 Or. App. 613, 619-20, 149 P.3d 265 (2006) (citing Davis v. State Farm Mut. Auto. Ins., 264 Or. 547, 549, 507 P.2d 9 (1973)).[9]

Because I conclude that Colorado law applies, I also conclude that plaintiffs are not entitled to coverage for damages for bodily injury caused by Lannie Haszard's intentional criminal conduct. Consequently, defendant's motions (## 56, 110, and 132) are granted in their entirety.

I am compelled to add that in reviewing the fourteen underlying complaints, Exhibits 5-18 to the Declaration of Julie Mederos, it appears that eight allege intentional torts,[10] and at least eleven, in essence, allege prior knowledge on defendants' part that Haszard had sexually abused

---

[8] Kevin Butler explains in his declaration that both ACE policies include the Colorado "Changes- Cancellation, Non-Renewal and State Required Conditions Endorsement," because Colorado is the insureds' state of domicile. Butler Decl., p. 3, ¶ 15. The National Union policy contains the same endorsement. Skinner Decl., Exh. A-2, p. NU 324.

[9] Mid-Century quotes the following passage from Davis:

> [T]his is an action upon a contract. The contract was entered into in Michigan under the authority of a Michigan statute and was issued to Michigan residents. The place of plaintiff's injury was fortuitous. Under such a set of facts, Michigan law applies. See Restatement (Second) Conflict of Laws §§ 188, 204(b); . . . .

Mid-Century Ins. Co. v. Perkins, 209 Or. App. 613, 619, 149 P.3d 265 (2006) (second citation omitted).

[10] Howard, Robbins, Rotting, Pries, Herring, Hines, Lucas, and Whalen.

patients and was likely to abuse again.[11] Those allegations, if proved, could preclude coverage even under Oregon law, if Oregon law applied, and in any event would likely trigger the "expected or intended" exclusion in all three policies.

CONCLUSION

Defendant National Union's motion (# 56) for summary judgment, defendant ACE's motion (# 110) for summary judgment, and defendant ACE's motion (# 132) for summary judgment on the Akre claim are GRANTED. Any other pending motions are denied as moot, and this action is dismissed with prejudice.

DATED this 21st day of October, 2011.

ROBERT E. JONES
U.S. District Judge

[11] Akre, Howard, Robbins, Asbury, Terpening, Pries, Herring, Webb, Hines, Lucas, and Corning.