IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| AMERICAN MEDICAL RESPONSE NORTHWEST, INC., AMERICAN MEDICAL RESPONSE, INC., | ) ) ) ) | Case No. 3:09-cv-01196-JO |
| Plaintiffs, | ) ) | |
| v. | ) ) | OPINION AND ORDER |
| ACE AMERICAN INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) ) ) | |
| Defendants. | ) ) | |

JONES, J.:

## I. Background

This action arises out of the defendant insurance companies' denial of coverage to

plaintiffs American Medical Response Northwest, Inc. and American Medical Response, Inc.

(collectively, "AMR") in connection with sixteen underlying state court actions filed by third-

party plaintiffs against AMR and its employee Lannie Haszard.  Some of the complaints in the

underlying actions alleged negligence, battery and Vulnerable Person Abuse, and some alleged

just one or two of those causes of action.  One of the underlying cases went to trial and the jury

found AMR and AMR Northwest guilty on the negligence claim, awarding $1.75 million in

damages and AMR Northwest guilty on the Vulnerable Person Abuse claim, awarding $1.5

million in damages.  Following that trial, AMR settled six of the suits.  The remaining suits are

pending in Oregon state court. AMR brings this action against two insurers, defendants ACE

American Insurance Company ("ACE") and National Union Fire Insurance Company ("National

Union"), requesting declaratory relief for breach of insurance contract. In their motions for

summary judgment, defendants argued that the intentional act of sexual assault cannot qualify as

an "accident" or "occurrence" within the meaning of a general commercial liability policy.

National Union also contended that exclusions within its policies preclude coverage. I granted

summary judgment in favor of defendants based on their first argument and never reached the

exclusion issue. AMR appealed the summary judgment ruling and the Ninth Circuit Court of

Appeals reversed and remanded, holding that AMR's negligent conduct in hiring, training, and

supervising Haszard was covered under defendants' policies as an "occurrence." The Ninth

Circuit Court directed the district court to look at the allegations in each of the underlying third-

party complaints and the 1998 jury verdict to determine whether plaintiff's alleged covered

"occurrences."

Following the remand, I ruled that settlements in some of the underlying cases rendered

the alleged causes of action legally null (#204) and that the allegation of intentional battery in the

*Whalen* case was not a covered occurrence within the terms of the defendants' insurance

policies. (#213)  AMR filed a Motion for Reconsideration (#217) of those rulings.  After AMR

filed its Motion for Reconsideration, I allowed additional briefing from the parties as to the

exclusions provisions and the issues raised in the Motion for Reconsideration.  This opinion

addresses whether summary judgment is appropriate because an exclusion provision precludes

coverage as well as the settlement and battery issues raised in the Motion for Reconsideration.

## II. Standards

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service*, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630-31.

Although the Federal Rules of Civil Procedure do not expressly authorize a motion for reconsideration, "[a] district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment." *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005).

### III. Exclusions

Defendants assert their policies contain exclusions that preclude coverage for the underlying claims: specifically, the Patient Injury Exclusion Endorsement and the Expected or Intended Exclusion. Under both Colorado and Oregon law, insurers have the burden of proving the applicability of exclusions. *Stanford v. Am. Guar. Life Ins. Co.*, 571 P.2d 909, 911 (Or. 1977); *Am. Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo. 1991). In addition,

exclusions are narrowly construed against insurers. *Stanford*, 571 P.2d at 911; *Johnson*, 816

P.2d at 955 n. 1.

A.  <u>Patient Injury Exclusions</u>

ACE contends it is entitled to summary judgment because its policy excludes coverage

for injury sustained from patient care.  ACE's policy provides:

**PATIENT CARE ENDORSEMENT**

> This insurance does not apply to any liability arising out of any INSURED's
> providing or failing to provide any services of a professional nature to a
> PATIENT.
>
> PATIENT means any person who seeks any form of medical care provided by any
> INSURED whether on an in-patient, outpatient or emergency basis.

Defendant ACE argues that its policies do not cover the claims because AMR's liabilities arise

out of the provision of emergency ambulance services to patients.  ACE notes that AMR

dispatched an ambulance with Haszard, a licensed EMT, to respond to and treat the plaintiffs in

the underlying cases.  Those plaintiffs sought medical care provided by AMR on an emergency

basis and therefore are patients within the terms of the endorsement.  AMR counters that for

ACE's exclusion to apply, ACE must prove that the claims arose out of providing or failing to

provide any "services of a professional nature," and Haszard's sexual conduct was not a service

of a professional nature.

Colorado and Oregon courts' analyses of the term "professional services" start with

*Marx v. Hartford Accident & Indem. Co.,* 157 N.W.2d 870 (Neb. 1968).  *See, Noyes Supervision,*

*Inc. v. Canadian Indem. Co.,* 487 F.Supp. 433, 438 (D. Colo. 1980) (applying Colorado law)

(relying in part on *Marx* to determine the meaning of the term "professional services" in an

insurance contract); *Multnomah Cnty. v. Oregon Auto. Ins. Co.*, 470 P.2d 147 (Or. 1970).  In

*Marx*, the physician/plaintiff's employee mistakenly poured benzene instead of water into a sterilization machine. The machine exploded causing extensive damage to the physician's building. The court held that damage to the building was not covered by physician's medical malpractice insurance that was obligated to pay for damages "[i]n rendering or failing to render professional services," because the act that caused the damages "was not an act requiring any professional knowledge or training." In ruling that the pouring of benzene into a machine was not the rendering of professional services, the court reasoned that "[a] 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor or skill, and the labor, or skill involved is predominantly mental or intellectual, rather than physical or manual." *Marx*, 157 N.W.2d at 872.

In *Oregon Auto.*, the court agreed that the nature of the services being performed is paramount to the status of the person providing the services. "In determining whether a particular act . . . is of a professional nature, the act . . . itself must be looked to and not the title or character of the party who performs or fails to perform the act." *Oregon Auto.*, 470 P.2d at 150. In *Hedmann v. Liberty Mut. Fire Ins. Co.*, 974 P.2d 755 (Or. Ct. App. 1999), the court applied this principle in a duty to defend case, ruling that a physician who prescribed medication to his non-patient girlfriend for the purpose of maintaining a sexual relationship with her was not providing "professional services" and thus the insurance policy did not cover his actions.

Here, Haszard, a licensed EMT, allegedly sexually assaulted numerous patients in the back of an AMR ambulance. Haszard's alleged acts are determinative, not his status as an EMT or the fact that he performed the acts in an ambulance. Sexual assault is not the rendering of professional services. ACE has not proven that the Patient Care Endorsement in its policy applies

as a matter of law.  Accordingly, the Patient Care Endorsement does not provide ACE with a basis for summary judgment.

National Union contends it is entitled to summary judgment under a similar exclusion. However, the Patient Injury Exclusion Endorsement in National Union's policy is different from ACE's policy.  Unlike Ace's exclusion, National Union's exclusion is not based on "the provision of professional services."  National Union's policy provides:

### Patient Injury Exclusion Endorsement

Patient Injury

This insurance does not apply to Bodily Injury, Property Damage or Personal Injury and Advertising Injury sustained by a Patient.

This exclusion, however, does not apply to Bodily Injury sustained by a Patient if such Bodily Injury arises out fire or lightning, windstorm or hail, explosion, riot, strike or civil commotion, collision or upset of an Auto or Mobile Equipment or aircraft, sonic shock waves, smoke vandalism or malicious mischief, sprinkler leakage, elevator malfunction, earthquake or flood, or collapse of building, being dropped while in the care, custody or control of the Insured, or ownership, maintenance or use of premises and all operations necessary or incidental thereto.

Patient means any person seeking or receiving, either on a inpatient, outpatient or emergency basis, any form of medical, surgical, dental or nursing care, service or treatment.

Defendant National Union contends this exclusion precludes coverage for any bodily injury sustained by a "patient" arising out of the misconduct of Haszard.  National Union argues that all of the underlying claimants were "patients" as they all were seeking medical care, on an emergency basis, while being transported to the hospital.  National Union notes that all of the underlying complaints contain repeated references to "patients" and that AMR, in its answers to the complaints, did not deny the allegations that the claims involved "patients."  AMR responds that the underlying plaintiffs were not "patients" at any time.  AMR notes that courts have held

that sexual assault and inappropriate sexual touching are not "medical" care, service or treatment, citing *St. Paul Fire & Marine Ins. Co. v. Alderman*, 455 S.E.2d 852 (Ga. App. 1995) and *R.W. v. Schrein*, 652 N.W.2d 574 (Neb. 2002). However, in both of those cases, the insurance policies exclusions were based on "the rendering or providing of professional services," language not present in National Union's policy.

Policies containing language as to "the rendering or providing of professional services" focus on the person who is providing the service and whether that service requires professional expertise. The exclusion in National Union's policy is not based on this premise. National Union's policy focuses instead on the person receiving the services. National Union's policy states that the insurance does not apply "to bodily injury . . . sustained by a patient." A patient is defined as "any person seeking or receiving...any form of medical service or treatment." The definition applies to those either seeking or receiving medical services. While I agree with AMR that the sexual assault the plaintiffs allegedly received was not medical care, the policy exclusion is not limited to persons receiving medical care. The exclusion also applies to those seeking medical care. Every plaintiff in the underlying cases called AMR because they were seeking medical services. Furthermore, each plaintiff entered the ambulance seeking medical service and continued that pursuit the entire time they were in the ambulance. All of the plaintiffs in the underlying cases were patients within the terms of the contract.

AMR argues that using National Union's definition of "patient" results in the evisceration of coverage; denying coverage for any bodily injury to anyone transported by AMR leaves AMR with no practical coverage for its main risk in a policy with a $1 million premium. The scope of National Union's exclusion is not so broad. The exclusion contains seventeen exceptions, and although none apply here, the exceptions cover substantial areas of liability that could arise in the

course of providing ambulance services, such as auto collision and patients being dropped.[1]

AMR also contends that the plaintiffs in the underlying cases may have entered the ambulance as

patients, but their status changed during the course of their ambulance trip. In support of its

argument, AMR cites *Levi v. Heckler*, 736 F.2d 848 (2d Cir. 1984) and *Westchester Sq. Med.*

*Ctr. v. ITT Hartford Ins. Group*, 239 A.D. 2d 297 (N.Y. App. 1997). In those cases, individuals

who had been patients in hospitals and who received medical care were discharged from the

hospital, either to go home or to a nursing home. In both cases, those individuals were no longer

deemed to be patients. Here, the individuals in the back of the ambulances were seeking medical

care the entire time. They had not been discharged. In fact, medical care was being provided to

them while they were en route to the hospital, in addition to the unwanted sexual assault. Their

status did not change during the course of their ambulance trip.

Both AMR and National Union cite *Volk v. Ace American Ins. Co.*, 748 F.3d 827 (8th

Cir. 2014), which appears to be the only case where language similar to the language in National

Union's exclusion provision has been litigated. In *Volk*, a developmentally disabled child who

required a personal care assistant was blinded in his left eye by a BB gun given to him by the

assistant, an employee of North Country Home Care, Inc. Ace provided professional and general

liability insurance to North Country but denied coverage, citing the exclusion in the general

liability policy for: "Any loss, cost or expense arising out of 'bodily injury' to your patients."

*Volk*, 748 F.3d at 828. Unlike the policy at issue here, the term "patient" was not defined in the

policy in *Volk*. While the court in *Volk* looked elsewhere to define "patient," here the term is

expressly defined in the insurance policy as "any person seeking *or* receiving . . on a[n] . . .

---

[1] Plaintiff argues Haszard's actions qualify as malicious mischief, but malicious mischief is a term of art that refers only to property damage. *See* C.R.S.A. § 18-4-501 (2009); O.R.S. §§ 164.345, 164.354, 164.365 (2012). Malicious mischief is synonymous with criminal mischief in Oregon and Colorado law. *See, e.g., People v. Blizzard*, 852 P.2d 418, 420 (Colo. 1993); *Herod v. Colorado Farm Bureau Mut. Ins. Co.*, 928 P.2d 834, 836 (Colo. Ct. App. 1996); *Hatley v. Truck Ins. Exch.*, 494 P.2d 426, 427 (Or. 1972).

emergency basis, any form of medical . . . service or treatment." As I discussed above, all of the plaintiffs in the underlying cases fit that definition. Thus, National Union has proven as a matter of law that the Patient Injury Exclusion precludes coverage.[2] Because there are no issues of material fact and National Union is entitled to judgment as a matter of law, National Union's Motion for Summary Judgment (#56) is granted.


B. Expected or Intended Exclusion

Defendants assert that the "Expected or Intended Exclusion" also precludes coverage. Both defendants policies utilize similar language for this exclusion, so I address them concurrently. ACE's policy states:

**SECTION II (EXCLUSIONS)**
**WHAT IS NOT COVERED BY THIS POLICY**

This insurance does not apply:

J. To BODILY INJURY or PROPERTY DAMAGE expected or intended from the standpoint of the INSURED; however this exclusion does not apply to BODILY INJURY resulting from the use of reasonable force to protect persons or property.


National Union's policy states:

Section V.      EXCLUSIONS

        K.      Expected or Intended Injury

---

[2] Because I grant summary judgment on the Patient Injury Exclusion, I do not address the two other exclusions National Union asserts bar coverage.

This insurance does not apply to Bodily Injury, Property Damage or Personal Injury and Advertising Injury expected or intended from the standpoint of the Insured. However, this exclusion does not apply to Bodily Injury or Property Damage resulting from the use of reasonable force to protect persons or property.

Both policies bar coverage if the injury or damage was "expected or intended from the standpoint of the insured." AMR is the insured in this case. There is no doubt that Haszard himself "expected or intended" harm. The question is whether AMR did.

Under both Oregon and Colorado law, the Expected or Intended Exclusion only applies if the insured subjectively intended to cause harm. *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1088 (Colo. 1991); *Allstate Ins. Co. v. Stone*, 876 P.2d 313, 314 (Or. 1994). In Oregon, "it is not sufficient that the insured's intentional, albeit unlawful, acts have resulted in unintended harm; the acts must have been committed *for the purpose of inflicting the injury and harm* before either a policy provision excluding intentional harm applies or the public policy against insurability attaches." *Ledford v. Gutoski*, 877 P.2d 80, 83 (Or. 1994) (emphasis added) (quoting *Nielsen v. St. Paul Cos.*, 583 P.2d 545, 547 (Or. 1978)).

In Colorado, the language "neither expected nor intended" is read to exclude only those damages that the insured knew would flow directly and immediately from its intentional act. *Hecla Mining*, 811 P.2d at 1088. The Supreme Court of Colorado held "what makes injuries or damages expected or intended rather than accidental is the knowledge and intent of the insured. It is not enough that an insured was warned that damages might ensue from its actions, or that, once warned, an insured decided to take a calculated risk and proceed as before. Recovery will be barred only if the insured intended the damages." *Hecla Mining*, 811 P.2d at 1088 (quoting

*Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1150 (2d Cir. 1988)).  Use of the term "expected" "does not mean the damage was foreseen as possible…the phrase 'expected or intended' operates almost identically to an intentional act exclusion predicated solely on intent." *Fire Ins. Exch. & Farmers Ins. Exch. v. Pring-Wilson*, 831 F. Supp. 2d 493, 506 (D. Mass. 2011) (citing *Hecla Mining*, 811 P.2d at 1087-88).

Thus, to prove that this exclusion applies under both Oregon and Colorado law, defendants must show that AMR had the subjective intent to cause harm.  In Oregon, courts may only "infer that the insured had a subjective intent to cause harm or injury as a matter of law when such subjective intent is the *only* reasonable inference that may be drawn from the insured's conduct." *Allstate Ins. Co. v. Stone*, 876 P.2d at 315 (emphasis added).  Absent such an inference, determining the subjective intent of the insured is a question of fact. *Allstate Ins. Co. v. Stone*, 876 P.2d at 314. In Colorado, to show that the insured had the subjective intent to cause the alleged harm defendants must show that "the insured desired to cause the consequences of his act" or "'knew that they would flow directly and immediately from the insured's intentional act'…the damage must be practically certain." *Fire Ins. Exch. & Farmers Ins. Exch. V. Pring-Wilson*, 831 F. Supp. 2d 493, 506 (D. Mass. 2011) (citing *Hecla Mining*, 811 P.2d at 1087-88).

Under these standards, defendants have not established as a matter of law that AMR subjectively expected or intended to harm any of the people injured by Haszard.  The majority of cases defendants cite establish the subjective intent of the assaulter, not the intent of the assaulter's employer. *See Cole v. State Farm Fire & Cas. Co.*, 25 Fed. App'x 791 (10th Cir. 2002); *Lopez ex rel. Lopez v. American Family Mut. Ins. Co.*, 148 P.3d 438 (Colo. App. 2006);

*Nikolai v. Farmers Alliance Mut. Ins. Co.*, 830 P.2d 1070 (Colo. App. 1991); *Allstate Ins. Co. v. Stone*, 876 P.2d 313 (Or. 1994). Haszard's intent is not at issue, so these cases irrelevant.

The only case defendants discuss that finds the employer to have the required subjective intent is *Mountain States Mut. Cas. Co. v. Hauser*, 221 P.3d 56 (Colo. App. 2009). In *Hauser*, the employer acted intentionally by willfully and wantonly allowing an employee to sexually assault another employee. *Hauser*, 221 P.3d at 61. The Ninth Circuit has already distinguished *Hauser* from the matter at hand. *Am. Med. Response Nw., Inc. v. ACE Am. Ins. Co.*, 526 F. App'x 754, 756 (9th Cir. 2013). The insured employers in *Hauser* were the father and uncle of the assaulter, and they knew that the assaulter had sexually abused other female employees. *Am. Med. Response Nw*, 526 F. App'x at 756. The insured was found guilty of intentional conduct and the jury awarded damages against the insured because the insured "knew full well what was potentially going to happen with [the supervisor] and the female employees and did not care." *Am. Med. Response Nw*, 526 F. App'x at 756 (quoting *Hauser*, 221 P.3d at 58).

AMR did not know for a fact that Haszard had sexually assaulted women in the past, and AMR has not been found guilty of intentional conduct. Haszard worked for AMR and its predecessor from November 1991 to December 2007, and for fifteen years, Haszard showed no indication of aberrant behavior. AMR first received a complaint of inappropriate physical contact by Haszard in December 2006. They received a second complaint in March 2007. AMR investigated both complaints, and found them to be unsubstantiated. The investigating police officer found no tangible leads and no physical or forensic evidence to substantiate the claim. As soon as AMR received a third complaint, they notified the police and accepted Haszard's resignation.

Based on these facts, I conclude as a matter of law that AMR did not subjectively intend or expect to cause harm. The defendants have not produced any evidence that AMR desired to hurt the women Haszard allegedly assaulted. Moreover, defendants present no cases that support their allegation that AMR's subjective intent to harm these women can be inferred. At best, the two complaints in this case served as a warning to AMR, and they took a calculated risk by continuing to employ Haszard. However, the Supreme Court of Colorado has held that intent cannot be inferred from this type of conduct. *Hecla Mining*, 811 P.2d at 1088 (quoting *Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d at 1150). Therefore, subjective intent cannot be found as a matter of law under Colorado law.

Furthermore, more than one reasonable inference can be drawn from AMR's decision to keep Haszard as an employee after the first two complaints. It is reasonable to infer that AMR believed Haszard to be innocent of the alleged touching, since the claims were unsubstantiated and Haszard worked for AMR for fifteen years without incident. Thus, subjective intent cannot be found as a matter of law under Oregon law. *Allstate Ins. Co. v. Stone*, 876 P.2d at 315.

Therefore, I find that AMR did not subjectively expect or intend to harm any of the women in this case and the exclusion cannot be applied.

### IV. Settled Cases

AMR contends it is entitled to pursue coverage for the claims it settled and is entitled to indemnification for the full amount of the settlements because all of the claims alleged in the settled cases are "occurrences" and therefore covered. The duty to indemnify arises only when the insurance policy actually covers the harm. *Nw. Pump & Equipment Co. v. American States Ins. Co.*, 925 P.2d 1241, 1243 (Or. Ct. App. 1996) (en banc); *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003). Thus, AMR is only entitled to

indemnification for the settlements based on claims covered by the defendants' policies. In looking at the complaints of the six underlying actions that settled, all six alleged negligence and battery. In addition, four of the six cases allege a violation of the VPA statute or its precursor the Elder Abuse statute. Under the Ninth Circuit's mandate, the negligence claims are covered occurrences. *Am. Med. Response Nw.*, 526 F. App'x at 755. However, as discussed below in Section V, the battery claims are not covered occurrences. The VPA claims may or may not be covered occurrences, depending on the outcome of a case that is pending in the Oregon Court of Appeals.

To what extent AMR may be indemnified for the settlements depends on the factual bases for the settlements. The insurer's obligation to indemnify is "determined on the basis of the ultimate facts ... that formed the basis for the settlement." *Bresee Homes, Inc. v. Farmers Ins. Exchange*, 293 P.3d 1036, 1044 (Or. 2012). Whether the cases settled on the basis of negligence, battery, VPA, or some combination of those allegations is a question of fact. These ultimate facts must demonstrate a right to coverage. *Nw. Pump*, 925 P.2d at 1243. See also, *Cyprus Amax Minerals Co.*, 74 P.3d at 302 ("The determination of whether a duty to indemnify exists requires factual development...")

AMR claims that defendants/insurers have the burden to prove any settlement amount is not covered. Defendants counter that under Oregon law, the burden is on the plaintiffs/insured to prove the basis for the settlement is a covered claim within the terms of the policy, citing an unpublished opinion *Clackamas Cnty. v. MidWest Employers Cas. Co.*, 2009 U.S. Dist. LEXIS 118195 (D. Or. Oct. 8, 2009), adopted by 2009 U.S. Dist. LEXIS 118205 (D. Or. Dec. 14, 2009). While not authoritative, the reasoning in *MidWest* is instructive. Oregon courts have not addressed which party bears the burden of proof to apportion a settlement that encompasses both

14 Opinion and Order

covered and non-covered claims. As a general matter, plaintiffs bear the burden to prove

damages in a breach of contract cause of action, *see Davis v. Wilson*, 493 P.2d 31 (Or. 1972), and

the burden is on the insured to allocate settlement between covered and non-covered claims. *See*

*Raychem Corp. v. Federal Ins. Co.,* 853 F.Supp. 1170, 1176 (N.D.Cal.1994) (holding the insured

bears the *prima facie* burden to produce evidence that the settlement related to covered claims).

However, where the insurer behaved wrongfully, courts place the burden on the insurer to

allocate settlement between covered and non-covered claims. *See MW Builders, Inc. v. Safeco*

*Ins. Co. of Am.*, No. 02–1578, 2009 WL 995039, at *6 (D. Or. Apr. 9. 2009) (finding "clear

authority for concluding that under some circumstances it is appropriate that insurers shoulder ...

responsibility" for allocating the settlement between covered and non-covered claims). In

addition, some courts have held that the burden of proof is on the insurer if the insurer breached

its duty to defend. *See, e.g., Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawaii,* 875 P.2d 894

(Haw. 1994) ("Where the insured seeks indemnification after the insurer has breached its duty to

defend, (1) coverage is rebuttably presumed, (2) the insurer bears the burden of proof to negate

coverage, and (3) where relevant, the insurer carries its traditional burden of proof that an

exclusionary clause applies.").

There appears to be no reason to assign the burden to defendants to prove which claims

were covered and which were not. Their contractual obligation to AMR is to indemnify AMR

for covered claims. As a party to the underlying settlements, AMR is in the best position to

know the bases for the settlements in the underlying cases. Therefore, AMR has the burden to

prove the underlying settlements were for covered claims. As for the four underlying settled

cases which alleged a violation of the VPA statute (Howard, Rotting, Pries and Hines), a

determination as to which claims are covered and which are uncovered will be stayed pending the outcome of the case at the Oregon Court of Appeals.

<strong>V. Battery</strong>

AMR asserts the *Whalen* complaint does not state a claim for direct liability for battery under Oregon law; rather, it alleges a cause of action against AMR for vicarious liability. Further, AMR argues that the Ninth Circuit's comment that "AMR does not seek coverage for any vicarious liability for Haszard's intentional acts" was made in the context of the negligent hiring and supervision claims against AMR and did not expressly decide whether the *Whalen* battery claim was vicarious or direct liability. The Ninth Circuit said "the district court will need to look at the allegations in each of the … underlying third-party complaints…to determine whether coverage applies to our analysis." *Am. Med. Response Nw Inc.,* 526 Fed. App'x. at 756. In looking at the underlying complaint in the *Whalen* case, it is clear that the claim against AMR is for battery and not for negligence. The caption reads "Complaint for Battery." The only cause of action in the complaint is "against defendant Lannie Haszard, AMR Northwest and American Medical Response, Inc. for battery." The complaint then sets out myriad intentional physical activities perpetrated by Haszard on the third-party plaintiff. The complaint is devoid of any allegations supporting a claim that AMR was vicariously liable for the negligent hiring, training, or supervising Haszard. The intentional battery that is alleged in *Whalen* is not an "accident" and therefore not an "occurrence" under the defendants' policies, whether Oregon or Colorado law is applied. *See St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.,* 923 P.2d 1200 ( Or. 1996); *Hauser,* 221 P.3d at 56. Defendants' Motions for Summary Judgment (## 56, 110, 132) are granted as to the battery claims.

## VI. Conclusions

ACE's Patient Care Endorsement does not preclude coverage.  National Union's Patient Injury Exclusion Endorsement applies and precludes coverage.  Both ACE's and National Union's Expected or Intended Exclusions do not preclude coverage.

Settlement of the underlying cases does not nullify the insurance coverage. Whether AMR is entitled to coverage for the full amount of the settlements is a question of fact. Defendant's obligation to indemnify is determined by the ultimate facts that formed the bases for the settlements.  These ultimate facts must demonstrate a right to coverage and AMR has the burden to prove those facts.

The cases[3] alleging a violation of the VPA statute remain stayed and the four settled cases[4] in which VPA was alleged are now also stayed.

The intentional battery that is alleged in the *Whalen* complaint is not an "occurrence" under defendants' policies.

ACE's Motions for Summary Judgment (#110 and #132) are DENIED as to the exclusions and GRANTED as to the battery claims.  National Union's Motion for Summary Judgment (#56) is GRANTED.  AMR's Motion for Reconsideration is GRANTED.

DATED this ___10th___ day of July, 2014

Robert E. Jones
Senior United States District Judge

---

[3] Slusher, Akre, Kendrick,Shaftel, Asbury, Terpening, Webb, and Corning
[4] Howard, Pries, Hines and Rotting